GRALYNN LAUNDRY, INC., v. THE VIRGINIA BOND & MORT-GAGE CORPORATION, H. H. TAYLOR, as Receiver of the City Trust Company, as Trustee; A. HAMILTON BRYAN, W. W. BEVERLY, and LUKE D. BRURY, as Trustees in Bankruptcy for M. B. FLORSHEIM, RICHARD H. SMITH, J. LEE DAVIS, BEVERLY B. MUNFORD, SIDNEY L. STERN, and AMERICAN LAUNDRY MACHINERY CO.

163 So. 706.
Opinion Filed October 29, 1935.

*Mitchell D. Price & Charles W. Zaring* and *Robert S. Florence,* for Appellant;

*Hudson & Cason, Curry & Ward* and *G. M. McNutt,* for Appellees.

TERRELL, J.—In 1925 and 1926, appellant, Gralynn Laundry, Inc., a Florida corporation purchased under retained title contracts from appellee, American Laundry Machinery Co., certain machinery which it had installed in the laundry building of appellant located on Lots One, Two, Nineteen and Twenty, Block 33 North, City of Miami.

In June, 1927, Gralynn Laundry, Inc., executed and delivered to the City Trust Company, as trustee, bonds aggregating $150,000.00, dated June 1, 1927, payable to bearer ratably and without priority, and secured by a trust deed describing the laundry and lots of appellant. Default in making installment payments on the bonds occurred March

5, 1931, when Virginia Bond and Mortgage Corporation, the holder of 51% of the bonds demanded that the trustee foreclose the trust deed. The trustee declined to foreclose and Virginia Bond and Mortgage Corporation, as complainant, instituted this suit March 6, 1931, for that purpose.

The bill of complaint prays that the trust deed be foreclosed, that the property be sold and the proceeds first applied to payment of complainant's bonds with accrued interest thereon, and that it be allowed attorney's fees for foreclosing. All the defendants answered the bill of complaint denying the material allegations thereof, denying that complainant was the owner and holder of 51% of the bonds and had declared them due and payable and denying that complainant was entitled to attorney's fees for foreclosing the trust deed.

In addition to denying the material allegations of the bill, American Laundry Machinery Company set up by way of cross bill its retained title contracts, asserting that it still owned a large part of the machinery described in the bill of complaint and prayed that it be decreed to be the property of the cross complainant and that Gralynn Laundry, Inc., be required to deliver said machinery to cross complainant. Cross complainant also prayed that pending the foreclosure appellant be required to pay it a monthly rental of $500.00 for the use of said machinery, and that in the event it failed to pay $24,500.00 with interest thereon, at the trial of this cause it surrender the notes held by it as evidence of the unpaid balance due on said retained title contracts.

On the issues so made testimony was taken before a special master who on final hearing found that complainant was entitled to foreclose the trust deed, that it was the owner and holder of 51% of the bonds, that Gralynn Laundry, Inc.,

had defaulted in making payments under the terms of the trust deed and that it was due complainant the sum of $3,149.00 as a reasonable attorney's fee. The special master also found that Gralynn Laundry, Inc., purchased of American Laundry Machinery Company the machinery described in the cross bill under retained-title contracts, that there was still due on said contracts principal and interest to October 3, 1934, the sum of $32,485.50, that said claim constituted a lien superior in dignity to all other claims and that unless paid within a short day the machinery should be sold to satisfy said claim.

To the finding of the special master, each and every, Gralynn Laundry, Inc., excepted. All said exceptions were overruled by the chancellor and final decree was entered on the special master's report. The instant appeal is from that final decree.

Was the chancellor in error in allowing complainant attorney's fees for foreclosing the trust deed?

Counsel all agree to the general principle of law that allowance of attorney's fee is purely a matter of contract and that they will not be allowed for foreclosing a mortgage or trust deed unless clearly and definitely provided for in the instrument foreclosed, or by other contract, or statute, and that such provisions should be strictly construed against the party foreclosing. Jones on Mortgages, 7th Ed., Vol. 3, 186, 19 R. C. L. 567.

The question of whether or not the chancellor was warranted in the allowance of attorney's fees in the case at bar, turns on the provision of the trust deed being foreclosed. If authorized, the amount allowed is not controverted. It is true that the trust deed contains no positive provision for the allowance of attorney's fees, but a reading of the entire instrument, particularly articles seven and eleven, discloses

a clear purpose on the part of the maker to pay attorney's fees incurred under stated circumstances and by the allegations of the bill such circumstances as were contemplated arose and the fees were incurred. If the instrument foreclosed, on its face evidences a clear intent to pay attorney's fees and it is shown that they were incurred within the terms of the instrument we would not be warranted in holding the chancellor in error for allowing them because the language employed for that purpose was not as direct or choice as it might have been. Article Seven, empowering the trustee to declare the bonds due, and Article Eleven, authorizing entry of the property, and sale of the bonds, clearly contemplates judicial proceedings for these purposes if necessary and read together they warrant the payment of reasonable attorney's fees for such proceedings. The fact that the trustee declined to foreclose and forced the complainant as bondholder to do so is not material. The trust deed provided for such a contingency.

It is next contended that the alleged subordination agreement was not sufficiently proven to show such priority of complainant's bonds as would authorize it to foreclose the trust deed.

The bonds described in the trust deed aggregated $150,-000.00 and were secured "equally and ratably and without priority." Complainant claims priority in payment of $80,000.00 of said bonds by virtue of a subordination agreement which is alleged to have been stamped on the face of all the subordinated bonds. None of the subordinated bonds nor the subordination agreement were put in evidence, though both were denied in the answers.

Paragraph five of the bill of complaint alleges that as part of the consideration for the purchase of the bonds held by the complainant, the holders of all the remaining bonds se-

cured by the trust deed agreed to subordinate and did subordinate their bonds to the lien of the bonds purchased by complainant and to evidence such subordination did stamp on the face of each bond secured by said trust deed other than the bonds purchased by complainant the following provision:

"In consideration of the purchase by the Virginia Bond and Mortgage Corporation of bonds of this series maturing from the 31st day of May, 1930, to the 31st day of May, 1933, both inclusive, it is agreed by the holder of this bond for himself and assignees that in the case of the event of default in the payment of any of the bonds covered by the deed of trust that this bond is of subordinate and inferior dignity to the above mentioned bonds held by the Virgina Bond and Mortgage Corporation."

Complainant alleges that it owns bonds in the sum of $80,500.00 which are superior in all respects to the bonds affected by subordination agreement. The record discloses that the holders of the subordinated bonds were made parties defendant to the bill of complaint and that a decree *pro confesso* was suffered to be entered against all of them except M. B. Florsheim for whom an answer was filed by his trustee in bankruptcy which in substance alleges that Florsheim held $14,000.00 of the subordinated bonds which were alleged to be a second lien on the lands, buildings and machinery described in the bill of complaint.

The evidence amply discloses that $65,000.00 of the bonds were subordinated to the remaining $85,000.00 and that the subordination agreement was stamped on each bond. It also shows that the $85,000.00 could not be secured till the subordination agreement was made. The subordinated bonds were all in the hands of defendants and none of them were offered in evidence.

In our opinion, such a showing would conclude this action against appellant, and this, with the fact, that complainant produced its bonds in court and filed them as evidence, and defendant offered no evidence to the contrary, would show conclusively that complainant was the owner and holder of 51% of all bonds secured by the mortgage within the meaning of the trust deed.

The concluding question raised has reference to the rights of American Laundry Machinery Company under its retained title contracts.

After setting up its right and title under the retained title contracts in the cross bill, American Laundry Machinery Company prays:

"That this defendant cross complainant be decreed to have title to and possession of the machinery and mechanical devices hereinbefore listed and set forth in the conditional sale orders, copies of which are hereto attached and referred to, and that this defendant cross complainant's right, title and interest therein is superior to that of any other parties to this cause of action.

"That the defendant, Gralynn Laundry, Inc., be ordered to deliver said machinery and/or mechanical devices to this defendant cross complainant."

Appellant contends that under its retained title contracts American Laundry Machinery Company could (1) take steps to recover possession of its goods either by replevin or action at law or by cross bill of complaint in the equity action of foreclosure then pending, or (2) it could waive its right to recover possession of the goods and bring an action for the unpaid balance of the purchase price, or (3) it could treat its contract as a mortgage and foreclose for the balance of the purchase price.

These remedies being inconsistent, appellant also contends that by proceeding to recover possession of the property by cross bill, American Laundry Machinery Company cannot now invoke the inconsistent remedy of foreclosure, neither can the master after such election give it a remedy inconsistent with its election to recover the goods.

The rule is well settled that an election once made between existing remedies which are inconsistent is not only irrevocable and cannot be withdrawn without consent, even though it has not been acted upon by another to his detriment, but it is also conclusive and constitutes an absolute bar to any action, suit, or proceeding based upon a remedial right inconsistent with that asserted by the election. In some decisions it is held that an election to pursue one of two inconsistent remedies, operates as an abandonment or a waiver of the other, while in others, it is held that the party making the election is estopped from again electing and resorting to the other remedy. Campbell v. Kauffman Milling Co., 42 Fla. 328, 29 So. 435; McKinnon v. Johnson, 59 Fla. 332, 52 So. 288, C. J. 38, 39 and 40.

In the case at bar cross complainant by its cross bill elected to retake possession of its goods and prayed accordingly. If it had cast its cross bill on the theory that its retained title contracts gave it a lien upon the goods and had prayed that said lien be foreclosed then it would have elected a remedy consistent with the final decree. The pleader must maintain the same attitude throughout the cause and the Court is without authority to award a different remedy than the one prayed for.

The cross complainant having sought and prayed for the restoration of its goods and the chancellor having awarded it foreclosure of its retained title contracts instead the final

decree to this extent was erroneous and is hereby reversed. Otherwise it is affirmed.

Affirmed in part, reversed in part.

WHITFIELD, C. J., and BROWN, BUFORD and DAVIS, J. J., concur.