FRED HOWLAND, INC., a Florida corporation, v. R. H. GORE, as Custodian and as Trustee of R. H. Gore Company, an Illinois corporation.

13 So. (2nd) 303 June Term, 1942
December 18, 1942 Division A
Rehearing Granted January 8, 1943 On Rehearing Granted May 7, 1943

782

*John C. Sullivan* and *Murrell & Malone,* for appellant.

*McCune, Hiaasen & Fleming* and *C. A. Hiaasen,* for appellee.

BUFORD, J.:

On June 9, 1936, R. H. Gore as Trustee for R. H. Gore Company, an Illinois corporation, who will be hereinafter referred to as the owner, entered into a contract with Fred Howland, Inc., a Florida corporation, who will be hereinafter referred to as the contractor, under which the contractor was to furnish all of the labor and materials and perform all the work necessary to be done for the completion of the exterior masonry walls, roof and structure repairs on a certain building in Fort Lauderdale, Florida, for the sum of $29,000.00 The building had been partly constructed back in 1925 or 1926 but it stood uncompleted for at least ten intervening years.

The work contemplated under this contract appears to have been performed with the exception of two minor items, and was paid for with exception of those items amounting to $170.00, and thereafter, on August 17, 1936, another contract was entered into between the same parties for the completion of the building for the sum of $125,500.00. It was provided in the contract that the building should be completed on or before November 15, 1936, and it was further provided:

"In the event said construction work is not completed on or before November 15, 1936, the contractor agrees to pay to the owner as liquidated damages for delay in completing said construction work the sum of One Hundred Fifty ($150.00) Dollars per each calendar day for each day's delay in completing said construction work. The owner shall be authorized to apply so much of the monies retained under this contract as may be necessary to pay the said liquidated damages."

Prior to November 15, 1936, the time for the completion of the building was extended to November 25, 1936.

It appears from the record that the building was substantially completed on November 25, 1936, but was not fully completed because the owner and the proposed tenant of certain store space in the building were in a controversy as to how that space should be finished. The record shows that it required about four weeks to furnish and equip the building for use as a first class hotel after the completing of the contract, and the record shows that the hotel was furnished and opened as such on December 24, 1936.

During the progress of the work the contractor claimed that he furnished and constructed numerous items in the building which he was not required to furnish under the terms of the contract but which he furnished and constructed at the specific request of the owner who agreed to pay for the same, and claimed a balance due under the two contracts, together with extras furnished, in the sum of $21,000.00. The owner refused to pay the bill. The contractor filed his notice of claim of lien in the office of the clerk of the circuit court on March 22, 1937, and thereafter, on June 24, 1937, filed his bill of complaint to foreclose his alleged lien for the sum of $21,000.00.

On October 20, 1937, the contractor filed his amended bill of complaint. Prior to the filing of the amended bill of complaint, defendant had filed his answer, and counter-claim and motion to dismiss. In the counter-claim the owner, inter alia, prayed:

"(b) That an accounting be had between the plaintiff and the defendant, and that it be adjudicated, and determined that plaintiff is indebted to the defendant for the following sums of money, to-wit:

1. Deduction for Walgreen Store ............................ $ 3,000.00

2. Liquidated damages for delay in completion of the building from November 15 to December 24, 1936, at $150.00 per day ............................ 5,850.00

3. Indemnification for and reimbursement of all sums paid for labor and materials furnished as alleged in Paragraph XVIII hereof ............... 3,163.29

4. The amount necessary to complete the building in accordance with the construction contract with M. E. Hoffman ........................ 16,922.58

5. Attorney's fees to be allowed defendant's solicitors ........................................................ 7,250.00

$36,185.87

that a credit be allowed on the foregoing in the following sums, to-wit:

1. Amount due plaintiff on first contract (completed by defendant at plaintiff's expense), shown as plaintiff's Exhibit A, ........................ 170.00

2. Amount due plaintiff on second contract partially shown as plaintiff's Exhibit B (completed by defendant at plaintiff's expense) ........... 6,370.00

3. Amount due plaintiff on extras (Venetian channel guides) ........................................... 570.07

$7,110.07

and that a money judgment be entered against the plaintiff in favor of the defendant for the sum of $29,075.80, together with interest on the said sum from the date said sum became due to the defendant, and that the defendant have execution thereon."

Motion to dismiss the amended bill of complaint contained the following:

"1. The amended bill of complaint fails to show that plaintiff has complied with the various provisions of Chapter 17097, General Acts of 1935, (Uniform Mechanics' Lien Act), so as to be entitled to a lien." and also the following:

"9. It affirmatively appears from the amended bill of complaint that plaintiff failed to perfect its alleged lien, as required by law, and, therefore, the Equity Court is without jurisdiction.

"10. Plaintiff's alleged claim of lien shown by Exhibit E, when considered in the light of the allegations of the

amended bill of complaint, affirmatively shows that it was not filed within the time required by law."

Voluminous testimony was taken, some 2000 pages in all, and after a part of this testimony was taken, on the 6th day of July, 1940, the court entered its final decree, as follows:

"This cause came on for final hearing upon the pleadings filed herein, the testimony and proofs submitted, and the argument of counsel. The finding of fact and conclusions of law made by the court are fully set forth in an opinion filed herewith. The motion to dismiss the bill of complaint should be granted for the reasons given but on equitable grounds the items claimed by the plaintiff and allowed by the court should be allowed as a set-off to the counter claim of the defendant as set out in the opinion.

"Thereupon It Is Ordered, Adjudged and Decreed as follows:

"1. That the motion to dismiss the bill of complaint as amended be and the same is hereby granted.

"2. That the following items claimed under the defendant's counterclaim be allowed:

| | |
|---|---|
| Deduction for Walgreen Store | $ 1,136.00 |
| Deduction for 30 days delay—liquidated damages | 4,500.00 |
| Cost of changing elevator | 1,000.00 |
| Attorney's fees | 5,000.00 |
| Removal of terrazzo on roof-tile replaced | 2,577.78 |
| Medicine cabinets and repairs to doors and screens | 575.65 |
| Material hoist | 274.09 |
| Grease trap, Simpson Plumb Co. bill | 162.00 |
| Electrical work | 50.19 |
| Total | $14,975.71 |

"But That Said Sum Is Subject to the Following Deductions:

| | |
|---|---|
| Balance on first contract | $ 170.00 |
| Balance on second contract | 6,370.00 |
| Terrazzo | 2,487.00 |
| Venetian guides | 570.07 |

| | |
|---|---|
| Store alterations | 922.00 |
| Deck gates | 40.00 |
| Installation of bolts | 72.00 |
| Shelving in storage room | 174.00 |
| Concrete slab between side-walk and building on Las Olas Boulevard | 66.80 |
| Cutting door to Porter's space | 15.22 |
| Shelving in kitchen | 31.57 |
| Bath vents | 21.38 |
| Repainting flag pole and sign | 12.00 |
| | $10,962.04 |

leaving a balance due to defendant in the sum of $4,023.67.

3. That defendant's counterclaim against the plaintiff in the sum of $4,023.67 be and the same is hereby allowed; that judgment in favor of the defendant and against the plaintiff for the said sum of $4,023.67 be and the same is hereby entered; that the cost of this proceeding be taxed by the clerk equally against each of the parties thereto; that execution issue against the parties for the sums found to be due by each of them respectively."

Thereafter, both parties filed petitions for rehearing. Pursuant to stipulation the court on July 23, 1940, entered an order as follows:

"It Is Ordered, Adjudged and Decreed, as follows:

"1. That said Stipulation will be recognized by this Court.

"2. That the petition or motions for re-hearing filed by the parties hereto shall operate to stay proceedings in this cause in accordance with the terms and provisions of said Stipulation.

3. That when said motions or petitions for rehearing shall have been heard and determined by the Court by appropriate Order or Orders, each and/or both of said parties shall have thirty (30) days from said order or orders in which to supersede same, or to supersede the final decree entered herein."

Thereafter, on November 25th and before the petition for rehearing had been acted upon by the court, the owner filed a motion praying that further testimony be taken in which it was averred:

"1. It appears from the said final decree and the opinion filed therewith that the testimony produced was insufficient to authorize a just decree upon certain material points involved in the case, inasmuch as, although the court found the construction work of plaintiff, which is the subject matter of this suit, was defective, and that the defendant, as owner of the building, was justifiably dissatisfied with it (See Opinion, page 8, 12, 14 and 15); the court also found that there was insufficient testimony to support findings as to what should have been done to correct the situation and the reasonable cost of the same. The Court, in its opinion, among other things said: 'Some remedy should be found for the conditions which exist, but costly and untried experiments should not be indulged in.'

"2. Since the entry of said final decree, defendant has earnestly sought for a remedy for said conditions and believes that he has succeeded in remedying the same. Affidavits as to such remedy are attached hereto and made a part hereof.

"3. Proper predicate was laid in the pleadings to raise the question of insufficiency of said work and support findings thereon, if properly proven.

"4. Such additional evidence is available, as shown by the aforesaid affidavits, and their submission is essential in order that full justice may be done.

"The rule applicable has been stated by the Supreme Court of this State in the case of Wilkins v. Bank of Commerce, 95 Fla. 85, 116 So. 13. 'Where there is such an insufficiency of evidence as to leave a material point in controversy uncertain and such a point is covered by the pleadings and it affirmatively appears that the additional evidence is available and justice seems to require a more complete development of the rights of the parties under the law, the cause may be remanded with direction to take further evi-

dence on such point. Fleischer v. Va. Carolina Chemical Co., 82 Fla. 50, 89 So. 401.'

"Wherefore, the defendant moves for the entry of an order reopening this case for the purpose of the submission by the parties hereto of further evidence as to said conditions, the remedy for the same, the reasonable cost thereof, and any other pertinent testimony which this Court shall consider necessary to enable it to render a complete and full adjudication of the rights of the parties hereto."

Thereafter, on order of the court, further testimony was taken and the cause again submitted and on February 5, 1942, the court entered its amended final decree, as follows:

"This cause came on for final hearing and the premises considered,

"It Is Ordered, Adjudged and Decreed as follows:

"1. That the final decree entered on July 6, 1940, be and the same is hereby adhered to except as herein modified.

"2. That the lis pendens filed by the plaintiff on June 24, 1937, be and the same is hereby cancelled and discharged.

"3. ' That an additional sum of $12,835.99 be allowed under defendant's counterclaim for the repairs made and done under the two contracts with A. C. Horn Company, the total sum allowed to defendant under his counterclaim being $16,859.66.

"4. That defendant's counterclaim against the plaintiff in the sum of $16,859.66 be and the same is hereby allowed; that judgment in favor of defendant and against the plaintiff for the said sum of $16,859.66 be and the same is hereby entered; that the cost of this proceeding be taxed by the Clerk equally against the plaintiff and defendant; and that execution issue against the parties for the sums found to be due by each of them respectively."

From the final decree as amended the contractor, plaintiff in the court below, appealed.

On final hearing the chancellor dismissed the bill of complaint, stating in his opinion, as follows:

"At the final hearing defendant contended that the bill should be dismissed because plaintiff has failed to allege and prove that the contractor had given the owner a sworn statement as required by the statute as to full payment of the claims of sub-contractors and of the employees of the contractor, or a statement setting forth the name of the persons not so paid and the amount due each of them. This contention is well founded, there being no allegation in the bill or proof of the giving of such sworn statement to the owner. The bill stated no cause of action and being fatally defective, it must be dismissed. The provisions of the statute are mandatory and the giving of the sworn statement required is a prerequisite to the acquiring of the lien by the contractor. Dodson v. Florida Nursery & Landscape Co., 190 So. 695."

In the above cited case also reported 138 Fla. 887, we construed the force and effect of Section 4, sub-paragraph 3 of Chapter 17097 Acts of 1935, and held:

"2. Mechanic's Liens.—To acquire and enforce contractor's lien for improvements on realty, contractor must give owner sworn statement required by statute as to full payment of sub-contractors and contractor's employees or names of and amounts due those not so paid and allege in bill of complaint sufficient facts to show compliance with such statute. Acts 1935, c. 17097, Sec. 4, subd. 3."

The appellant contends that the provisions of this statute were waived by the owner in providing in Article 5 of the contract as follows:

"Before issuance of final certificate the contractor shall submit evidence satisfactory to the architect that all payrolls, material bills and other indebtedness connected with the work have been paid."

That this provision in the contract superseded the provision of the statute above referred to. Appellant does not contend that this provision of the contract was complied with but contends that the contractor was prevented from complying with this provision of the contract and, therefore, from exercising his right to substitute the method of proof, by the owner discharging the architect before such proof was due to

be made. We cannot agree that the provision in the contract, supra, relieved the contractor from complying with the statutory provisions, supra, because it was not clearly made to appear that such was the intention of the parties.

Therefore, we cannot hold the chancellor in error in dismissing the bill of complaint. The statute, however, does not cancel the debt, if any, owed by the owner to the contractor, but merely precludes the contractor enforcing the obligation until the proof of payment of bills has been furnished, as provided by the statute.

It, therefore, follows that when the amended bill of complaint was dismissed there was left pending a suit in which the counterclaim filed became the initial pleading seeking affirmative relief with the answers thereto denying many allegations thereof and alleging grounds for off-set and recoupment. The burden was then on the counter-claimant to prove the allegations of the pleadings on which he sought affirmative relief. In other words, the case was then just the same as it would have been, had the owner filed an original bill and the contractor had filed his answer setting up his defenses and counterclaim. In such case the contractor on equitable principles, regardless of the statute, supra, would not be precluded from setting up as a defense any debt or demand due him by the owner growing out of the same transaction which was the basis of the owner's alleged claim against the contractor, at least to the amount of such owner's claims or demands. That such right exists is elementary and requires the citation of no authority.

We find 3 items as to which the owner was allowed recovery which we are convinced are unwarranted by the record. The first is the item of $4500.00 for 30 days delay in completion of the building. The burden was on the owner to establish the fact that the building was not substantially completed on November 25, 1936. We hold that the evidence does not support the finding in his favor on this issue.

The record shows that the owner went into possession of the building and began to use it for the purpose of installing furniture and fixtures therein on or about the 25th of November, 1936. The owner testified that he wanted the building

completed originally by November 15th because it would take some 4 to 6 weeks in which to install fixtures and furniture in the building and be ready for opening the same as a first class hotel for the winter season; and the record shows that within 30 days after November 25th the hotel was opened for business and the record does not show that at that time the contract had not been substantially completed except as to that portion which was intended to be occupied as a drug store, and the completion of this had been prevented by the affirmative action and request of the owner and the architect.

In this connection it is to be observed that Article 4 of the contract provides: "and upon substantial completion of the entire work a sum sufficient to increase the total payment to 95% of the contract price shall be paid;" and the record shows that a requisition for 95% of the entire contract price was rendered November 27, 1936. The requisition was approved by the architect who issued his certificate for payment on November 28th. This certificate was accepted by the defendant and the same was paid on December 1, 1936.

There is no substantial proof in the record that the owner was delayed after the 25th of November in proceeding with the furnishing of and occupying of the building by reason of the contractor's failure to substantially complete the performance of the contract in a manner acceptable to the architect who acted in this regard as agent for the owner.

So, regardless of whether or not the stopping of work on the store space in the hotel above referred to waived the completion of the building by November 25th, our conclusion is that the building was, with exception of the store space, substantially completed so that the owner could take it over and furnish it on November 25th and that, therefore, the owner has failed to establish his claim for liquidated damages of $4500.00 in this regard.

The next item as to which we are impelled to reverse the decree of the chancellor is of $1,000.00 allowed owner for the extension of elevator from the 7th floor to the 8th floor.

There were two elevators to be installed. One was a passenger elevator and the other a service elevator. There

were two sets of plans. One plan showed both elevators were to go to the eighth floor. The other plan showed the passenger elevator was to go to the eighth floor and the service elevator to go only to the seventh floor. As to the service elevator the specifications provided:

"The elevator shall travel from the ground to the seventh floor, a distance of 62′ 8″; serving seven landings and seven openings.

"Current Supply: Machine Location and Foundations, Soundproofing Guides, and Guide Lubricators to be the same as passenger elevator.

"Car from Safety and Governor, Cables, Sheaves & Beams to be the same as passenger elevator."

The contractor, with the approval of the architect, followed the plan showing only one elevator to the eighth floor and constructed the service elevator only to the seventh floor. The owner later had the service elevator extended to the eighth floor and claimed indemnity for the expense of so doing and was allowed $1,000.00 for same. The owner had every opportunity to see and know how the elevators were being constructed. He knew the specifications called for the service elevator to the seventh floor only and he was charged with notice that his agent, the architect, approved the construction as it was done. The burden was on owner to establish that in this regard the contractor departed from the plans and specifications.

The next item which we find must be eliminated from the recovery allowed the owner is that of $5,000.00 for attorneys' fees. Article 8 of the Contract provides:

"Article 8. The contractor agrees that it will indemnify and save harmless the owner from any loss or damage occasioned by any reason or thing arising or occasioned in any manner by and during the construction work done pursuant thereto and for any loss or damage sustained by the owner during a period of two years from the final acceptance of said construction work sustained by reason of any defect or imperfection in said construction work."

It is the contention of the appellee, and appears to have been the conclusion of the chancellor, that this provision of

the contract was sufficient to bind the contractor to pay attorneys' fees incurred by the owner in this suit. The rule in this regard is stated in the opinion by Mr. Justice TERRELL for this Court in the case of Graylynn Laundry Inc., v. Va. Bond & Mortgage Corporation, et al., 121 Fla. 312, 163 So. 706, wherein it was said:

"Counsel all agree to the general principle of law that allowance of attorney's fee is purely a matter of contract and that they will not be allowed for foreclosing a mortgage or trust deed unless clearly and definitely provided for in the instrument foreclosed, or by other contract, or statute, and that such provisions should be strictly construed against the party foreclosing. Jones on Mortgages, 7th Ed. Vol. 3, 186, 19 R.C.L. 567."

In that case the attorney's fees were allowed to be recovered because, as we construed the instrument there under consideration, the conclusion was reached that it was the intent of the parties to inclue attorney's fees as a part of a recovery which might be available. In that regard we said:

"If the instrument foreclosed, on its face evidences a clear intent to pay attorney's fees and it is shown that they were incurred within the terms of the instrument we would not be warranted in holding the chancellor in error for allowing them because the language employed for that purpose was not as direct or choice as it might have been. Article Seven, empowering the trustee to declare the bonds due, and Article Eleven, authorizing entry of the property, and sale of the bonds, clearly contemplates judicial proceedings for these purposes if necessary, and, read together, they warrant the payment of reasonable attorney's fees for such proceedings."

To the same effect was our holding in the case of Ritter's Hotel Inc., v. Sidebotham, 142 Fla. 171, 194 So. 322.

The provision above quoted from the contract here under consideration does not warrant any such construction as was applied to the instruments involved in either the Ritter's Hotel case or in the Gralynn Laundry case.

It cannot be said that this provision clearly and definitely indicated the intention of the parties to make attorney's fees recoverable herein.

In the answer owner relied on Article 8, supra, and averred: "that by reason of the plaintiff's defective construction work as herein alleged and by reason of plaintiff's failure to perform the terms and conditions of said construction contract, it became necessary for the defendant to employ McCune, Hiaasen & Fleming, attorneys at law, as his attorneys to protect his interest and to obtain performance by plaintiff of the terms and conditions of said construction contract; that defendant has agreed to pay his attorneys a reasonable fee for their services, all of which should be borne and paid by the plaintiff; that the sum of $7250.00 is a reasonable fee to be allowed defendant's said attorneys."

Under this allegation the owner proved the amount of a reasonable attorney's fee for attorneys employed in this suit which proof did not conform to his allegation supra. Attorneys' fees accruing as alleged in the answer may have been recovered on application of the rule stated in the case of Second National Bank of Parkersburg, West Va. v. U. S. Fidelity & Guaranty Co. 266 Fed. 489, and other cases of like import.

In this case, however, the effort is not to recover fees paid to attorneys in procuring the performance of the contract but for fees which owner became obligated to pay for services of counsel in an effort to collect what the owner claims is necessary to be paid by the contractor to him on account of what he expended in procuring the completion of the contract.

In the U. S. Fidelity & Guaranty Co. case, supra, the fees were allowed for services of its attorney employed to defend litigation which it was the duty of the indemnitors to defend and not for the fees for the services of attorneys in prosecuting the suit against the indemnitors on the claim for indemnity. The same is true of cases such as National Surety Co. v. Willis-Overland Inc., 103 Fla. 738, 138 So. 24. In that and other like cases the fee allowed to be recovered was for services rendered in the injunction suit and not for fees incurred in prosecuting the subsequent suit for recovery on the obligation of the bond. If in this case a materialman had filed notice of a lien and had sued the owner to enforce his

lien and the owner had employed counsel to defend that suit and such suit had resulted in judgment against the owner, which judgment the owner paid, the owner would then have been entitled to recover from the contractor the amount paid under the judgment, together with the costs and attorneys' fees which he had been required to expend in that suit. But, in suit to recover such amounts from contractor, owner could not under the terms of this contract also recover the amount which he had obligated to pay his attorneys for prosecuting the suit for recovery of his damages so incurred.

The attorneys' fees, not having been authorized by statute and not being within the purview of the contract, should not have been allowed.

The appellant has vigorously contested the propriety of the allowance of the item of $12,835.95 adjudicated against him in the amended final decree for repairs made and done under the owner's two contracts with A. C. Horn & Co. We would be inclined to agree with this contention, were it not for special provisions of the building contract together with the adverse findings of the chancellor on the evidence. The special provisions are shown in Articles 7 and 9, as follows:

"Article 7. The contractor does hereby warrant and represent to the owner that the plans and specifications covering the proposed construction work to be done pursuant to this contract are suitable and adapted for said work. The contractor guarantees the sufficiency and efficiency of said plans and specifications for their intended purpose and covenants that it will perform said construction work and complete the same to the entire satisfaction of the owner. The contractor does hereby warrant and guarantee that said hotel building, when completed, will be free from all ordinary water stains and ordinary water leaks and will not be, for a period of two years from date of completion thereof, subject to ordinary water leaks and ordinary water stains; and that the windows, doors and roof of said building are adequate to resist unusual wind storms common throughout South Florida. The final acceptance of said construction work shall not be effective unless the same be in writing signed by the owner in person."

"Article 9. The contractor covenants and warrants that

the plans and specifications and this contract provide for a completed hotel building exclusive of furniture and equipment and that the contract price herein agreed upon embraces and includes the entire construction of said hotel building to the entire satisfaction of the owner, exclusive of furniture and equipment."

The parties are sui juris and were competent to contract with one another as they saw fit. The record shows conclusively that both parties to this contract were men of wide experience in large business affairs and that they were both men of unquestioned honor and integrity; that they were dealing openly, fairly and clearly with one another.

The record shows that the contractor received valuable consideration for accepting these particular terms of the contract. By these terms of the contract he not only guaranteed the performance of the work in accordance with the plans and specifications, but he also guaranteed the efficiency and adaptability of the plans and specifications to accomplish the purposes desired and intended to be accomplished under the terms of the contract.

Having reached the conclusion above stated, the decree is affirmed, except as to the items hereinabove mentioned, as to which it is reversed, and the cause is remanded with direction that a decree be entered not inconsistent with the views herein expressed.

It is further adjudged that the costs of this appeal shall be taxed pro rata between the parties and that each party shall be required to pay one-half thereof.

So ordered.

BROWN, C. J., WHITFIELD and ADAMS, JJ., concur.

ON REHEARING GRANTED

PER CURIAM:

Pursuant to rehearing granted, we have reconsidered the record in the light of briefs and the argument of counsel and we reach the conclusion that our opinion and judgment entered herein on the 18th day of December, 1942, should be adhered to.

So ordered.

BUFORD, C. J., TERRELL, BROWN, CHAPMAN, THOMAS and ADAMS, JJ., concur.