United States Court of Appeals,

Fifth Circuit.

No. 93-7171.

L & A CONTRACTING COMPANY, Plaintiff-Counter Defendant-Appellee,

v.

SOUTHERN CONCRETE SERVICES, INC., Defendant-Counter Claimant-Appellant,

and

Fidelity & Deposit Company of Maryland, Defendant-Appellant.

March 25, 1994.

Appeal from the United States District Court for the Southern District of Mississippi.

Before WISDOM, HIGGINBOTHAM, and JONES, Circuit Judges.

WISDOM, Circuit Judge:

This case turns on the legal distinction between "breach" and "default".

A primary contractor sued its bonded subcontractor and the bonding agent for damages arising from the subcontractor's breach of the subcontract. The district court held the subcontractor and surety liable to the contractor. On this appeal, the subcontractor and surety challenge the district court's judgment. We AFFIRM the district court's judgment against the subcontractor. We VACATE the judgment against the surety and RENDER judgment in the surety's favor.

## I. BACKGROUND

L & A Construction Company ("L & A"), the general contractor on a project to build a bridge in Apalachicola, Florida,

1

subcontracted with Southern Concrete Services ("Southern") to provide concrete for the project. Southern, as required by the subcontract, obtained a performance bond from Fidelity & Deposit Company of Maryland ("F & D"). Southern began supplying concrete to L & A in early 1987.

We need not chronicle the ensuing deterioration in business relations between L & A and Southern. It suffices for this opinion to say that Southern failed to provide sufficient concrete to L & A in a timely manner and breached the subcontract in numerous other particulars. L & A repeatedly complained to Southern about its slow delivery rates and the poor quality of the concrete Southern supplied. On May 29, 1987, L & A sent Southern a letter stating that Southern had breached the contract and giving Southern five days to cure the deficiencies in its performance. L & A sent a copy of the letter to F & D. Southern's performance apparently improved after the May 29 letter. In response to a routine inquiry from F & D on August 3, 1987, L & A stated that Southern was performing satisfactorily.

Southern's improved performance did not last long, and L & A soon resumed its periodic complaints. On January 12, 1988, L & A sent another letter to Southern and F & D in which it requested "that the Bonding Company take the necessary steps to fulfill this contract to prevent any further delays and costs to L & A". F & D did not respond to the letter and took no action. Southern completed its obligations under the subcontract on May 27, 1988. At no time did L & A refuse to accept Southern's performance.

L & A sued Southern and F & D for breach of contract in Mississippi state court on August 19, 1988. The defendants promptly removed the case to the United States District Court for the Southern District of Mississippi on the basis of diversity of citizenship.[1] Southern counterclaimed against L & A alleging various breaches of the subcontract.

The district court conducted a six-day bench trial beginning on August 17, 1992. On September 22, 1992, the district court, applying Florida law,[2] held that both Southern and L & A had breached the subcontract. The district court, after offsetting the award from Southern's counterclaim, held that L & A was entitled to recover damages of $642,269 plus postjudgment interest from Southern and F & D.[3] After the district court overruled their

---

[1]Southern averred in its petition for removal that it was a Michigan corporation having its principal place of business in Michigan, F & D was a Maryland corporation, and L & A was a Mississippi corporation. The amount in controversy indisputably exceeded the statutory minimum of 28 U.S.C. § 1332(a).

[2]The parties agree on appeal that the district court correctly chose to apply Florida law. See Restatement (Second) of Conflict of Laws §§ 188, 194 (1971); *Boardman v. United Servs. Auto. Ass'n,* 470 So.2d 1024, 1032-34 (Miss.1985).

[3]The district court appears to have miscalculated the damage award. In its judgment of September 22, 1992, the district court itemizes its damage award:

| | |
|---|---|
| Base damages | $349,152 |
| Prejudgment interest | 178,269 |
| Attorneys' fees | 115,048 |

The sum of those figures is $642,469, or $200 more than the $642,269 the district court awarded. Because neither party called the discrepancy to our attention, however, we consider any argument over that $200 difference waived.

Although the district court's judgment does not so state, it

3

posttrial motions, the defendants appealed to this Court. L & A cross-appealed from the district court's judgment but later dismissed its cross-appeal. Only the defendants' appeals remain for us to decide.

This case turns on the language of the subcontract and Southern's performance and payment bond. "A bond is a contract, and, therefore, a bond is subject to the general law of contracts".[4] We review *de novo* questions involving the construction or interpretation of contracts.[5]

II.

*A. F & D's Liability Under its Bond*

We turn first to F & D's appeal. As a surety, F & D's liability is governed by the terms of its bond with L & A. While Southern is, of course, directly liable for its own breach of contract, the bond in this case imposes liability on F & D for Southern's breach only if two conditions exist. First, Southern must have been *in default* of its performance obligations under the subcontract. Second, L & A must have *declared* Southern to be in default.[6] The main focus of our inquiry is on the declaration

---

appears from the record that Southern and F & D's liability to L & A was intended to be joint and several.

[4]*American Home Assurance Co. v. Larkin Gen. Hosp., Ltd.,* 593 So.2d 195, 197 (Fla.1992).

[5]*Gladney v. Paul Revere Life Ins. Co.,* 895 F.2d 238, 241 (5th Cir.1990).

[6]F & D's Subcontract Performance Bond provided that F & D would become liable to take certain actions to remedy Southern's breach "[w]henever Principal shall be, and shall be declared by Obligee to be in default under the subcontract, the Obligee

4

requirement, although we shall also briefly address the type of default that is required.

We first must consider whether the bond term "declared ... to be in default" is ambiguous.[7] While the construction of unambiguous contracts is a matter of law, resolving ambiguous contracts requires a fact-specific inquiry to ascertain the parties' intent. That inquiry is best performed by the district court, and its factual determinations of the parties' intent will be reversed on appeal only if clearly erroneous.[8]

A contractual term is ambiguous if it is reasonably subject to more than one meaning.[9] Although the bond does not define the terms "declare" or "default", we consider the term "declared in default" unambiguous; the definition L & A offers is unreasonable. The only authority L & A offers for its view is *Webster's Ninth New Collegiate Dictionary. Webster's* defines "declare" as "to make clear; to make known formally or explicitly; to make evident; to

---

having performed Obligee's obligations thereunder". Pl.'s Ex. 189; Appellant's Record Excerpts tab J. In this tripartite suretyship arrangement, F & D was the "surety", Southern the principal obligor or simply the "principal", and L & A the "obligee". *See In re Eli Witt Co.,* 2 B.R. 487, 491 (Bankr.M.D.Fla.1979); Restatement (Third) of Suretyship § 1 (Tent.Draft No. 1, 1992).

[7]Whether a contract term is ambiguous is a question of law which we are free to decide *de novo. See Carrigan v. Exxon Co. U.S.A.,* 877 F.2d 1237, 1240 (5th Cir.1989).

[8]*Godechaux v. Conveying Techniques, Inc.,* 846 F.2d 306, 314-15 (5th Cir.1988).

[9]*See Friedman v. Virginia Metal Prods. Corp.,* 56 So.2d 515, 517 (Fla.1952); *Fireman's Fund Ins. Co. v. Murchison,* 937 F.2d 204, 207 (5th Cir.1991).

state emphatically" and "default" as "to fail to fulfill a contract, agreement, or duty". Therefore, L & A concludes, any communication that "[made] it clear that [Southern] failed to fulfill a contract or duty" constituted a legal declaration of default.

Three factors counsel rejection of L & A's popular dictionary authority. First, L & A's proffered definition misapprehends the legal nature of the "default" that is required before the obligee's claim against the surety matures. Although the terms "breach" and "default" are sometimes used interchangeably,[10] their meanings are distinct in construction suretyship law. Not every breach of a construction contract constitutes a default sufficient to require the surety to step in and remedy it. To constitute a legal default, there must be a (1) material breach or series of material breaches (2) of such magnitude that the obligee is justified in terminating the contract.[11] Usually the principal is unable to

---

[10]*See, e.g.,* Black's Law Dictionary 417 (6th ed. 1990), including "the omission or failure to perform a legal or contractual duty" among the definitions of "default".

[11]We draw this meaning from the words of a commentator:

> Not every breach of a construction contract, not even every material breach, constitutes a default under the contract as to justify termination and the involvement of a surety, if there is one. A default which would involve the surety is believed to require a material breach or series of breaches which are sufficient to justify termination of the contract by the owner/obligee.

James A. Knox, *Representing the Private Owner, in* Construction Defaults: Rights, Duties, and Liabilities § 9.3, at 201 (Robert F. Cushman & Charles A. Meeker eds., 1989). *Accord* Robert J. Hoffman & David L. Simmons, *Suing*

complete the project, leaving termination of the contract the obligee's only option.[12] The definition of "default" implicit in L & A's dictionary analogy impermissibly blurs the distinct concepts of "breach" and "default".[13]

Second, L & A's definition is impractical. A definition of a contract term that leads to impractical or commercially absurd

*the Subcontractor and Material Supplier, in* Construction Litigation: Representing the Contractor § 8.9 (Robert F. Cushman, John D. Carter & Alan Silverman eds., 1986). Mr. Knox has pointed out that a clear definition of "default" is most necessary in several common construction problems, including one that precisely matches the circumstances of this case. His list of circumstances in which a clear meaning of "default" is most necessary includes:

> 4. When the all-too-common confused situation develops where the obligee is claiming the principal has defaulted and the principal is claiming that the owner is in default.
>
> *5. A variation of the preceding situation, when the situation is confused, the obligee claims default but does not terminate and yet demands action by the surety.*

James A. Knox, *What Constitutes a Default Sufficient to Justify Termination of the Contract: The Surety's Perspective,* Constr.Law., Summer 1981, at 1.

[12]*See, e.g., Cotton States Mut. Ins. Co. v. Citizens and S. Nat'l Bank,* 308 S.E.2d 199, 203 (Ga.Ct.App.1983), explaining that "default in the relevant sense occurs only when the *principal finds itself unable to pay* and calls upon the surety to pay in accordance with the terms of the bond" (emphasis added).

[13]Our holding that a material breach of the subcontract is required before L & A may seek relief from F & D does not deprive L & A of a remedy for partial breaches of the subcontract. The subcontract itself prudently provides that L & A may withhold payments from Southern to compensate for partial breaches. *See* Pl.'s Ex. P-22, Appellants' Record Excerpts, tab I, sec. 3. L & A urges that the bond makes F & D an insurer even for those partial breaches, but we are unable to square that contention with the bond's requirement of a default.

results is unreasonable.[14] Serious legal consequences attend a "declaration of default", particularly in cases such as this case involving multi-million-dollar construction projects. Before a declaration of default, sureties face possible tort liability for meddling in the affairs of their principals.[15] After a declaration of default, the relationship changes dramatically, and the surety owes immediate duties to the obligee.[16] Given the consequences that follow a declaration of default, it is vital that the declaration be made in terms sufficiently clear, direct, and unequivocal to inform the surety that the principal has defaulted on its obligations and the surety must immediately commence performing under the terms of its bond. Sureties deprived of a clear rule for notices of default would be reluctant to enter into otherwise profitable contracts. Nothing in the record suggests that the parties intended such an impractical result.

Finally, L & A's definition does not promote the purpose for which the parties probably included a notice of default provision

---

[14]*See Lakeland Tool & Eng'g, Inc. v. Thermo-Serv, Inc.,* 916 F.2d 476, 481 (8th Cir.1990); *G.M. Shupe, Inc. v. United States,* 5 Cl.Ct. 662, 704 (Cl.Ct.1984).

[15]*See, e.g., Gerstner Elec., Inc. v. American Ins. Co.,* 520 F.2d 790 (8th Cir.1975); *Cox v. Process Eng'g, Inc.,* 472 S.W.2d 585, 587 (Tex.Civ.App.—Amarillo 1971, no writ); Restatement (Second) of Torts §§ 766, 766A (1979). "Prior to default, a surety does not have a unilateral right to intervene in a contract dispute between an owner and a principal unless the indemnity agreement between the surety and principal provides otherwise". Robert F. Cushman, et al., *Representing the Performance Bond Surety, in* Construction Defaults, *supra* note 11, § 5.2, at 106.

[16]*Zoby v. United States,* 364 F.2d 216, 219 (4th Cir.1966); *In re Wilson,* 9 B.R. 723, 725 (Bankr.E.D.N.Y.1981).

in F & D's bond.  That purpose was to avoid the common-law rule that a secondary obligor such as F & D is not entitled to notice when the time for its performance is due.[17]  That purpose is not served if L & A can fulfill its duty to provide "notice of default" to F & D by sending letters containing no mention of a default.

We conclude, therefore, that F & D's is the only reasonable view.  A declaration of default sufficient to invoke the surety's obligations under the bond must be made in clear, direct, and unequivocal language.  The declaration must inform the surety that the principal has committed a material breach or series of material breaches of the subcontract, that the obligee regards the subcontract as terminated, and that the surety must immediately commence performing under the terms of its bond.

Under this standard, L & A's evidence is insufficient as a matter of law to establish a declaration of default.  None of the letters L & A sent to Southern and F & D even contained the word "default", nor do we find an unequivocal declaration of default in the other items of correspondence L & A's brief calls to our attention.[18]  Accordingly, we must VACATE the district court's

---

[17]*See* Restatement of Security § 136 & cmt. a (1941).

[18]After inviting us to write *Webster's Ninth New Collegiate Dictionary* into Florida law, L & A provides a list of ten letters it sent to Southern, each of which it characterizes as a "declaration of default" under its definition even though only two of the letters were sent to F & D.  Appellee's Principal Brief at 14-15.  The sizeable volume of correspondence that fits L & A's definition of "declaration of default" underscores the overbreadth of the definition.  A declaration of default is an act of legal significance marking a fundamental change in relations among the parties to a suretyship contract.  The burden is on the party initiating that fundamental change to express it

judgment against F & D for Southern's breach, because L & A has failed to prove a necessary precondition to F & D's liability under its bond.[19]

*B. F & D's Liability for Delay Damages*

F & D next challenges the district court's judgment holding it liable for delay damages. We need not linger long on this question because it is directly controlled by the Florida Supreme Court's opinion in *American Home Assurance Co. v. Larkin General Hospital, Ltd.*[20] The *Larkin* Court held that "the surety's liability

---

plainly and unequivocally. Letters from general contractors attempting to prod subcontractors into improved performance are inevitably abundant in large construction projects but are not generally thought to constitute declarations of default. *See* Knox, *Representing the Private Owner, supra* note 11, § 9.2, at 200. It is not asking too much of obligees to require that when they wish to give up on a principal and look to the surety for satisfaction, rather than merely to urge the principal to what they hope will be better performance, they must say so *to the surety* in clear, unequivocal terms. *See, e.g., id.* § 9.7, at 217-18.

[19]Part IV.C of the district court's opinion dealt with what the district court characterized as F & D's breach of its own surety bond. On this appeal, L & A seizes on that language to argue that F & D's actions exposed it to liability for its own breach of contract notwithstanding Southern's conduct. Obviously L & A intends this argument to bring it within the protection of some favorable language in footnote 2 of the Florida Supreme Court's *Larkin* opinion, which we address below. We reject L & A's argument. L & A's failure to declare Southern in default excuses F & D's failure to remedy Southern's breach. F & D did not breach the terms of its bond and accordingly has no liability under the bond.

Because we conclude that L & A failed to declare Southern in default, we need not resolve the question whether the first requirement of the bond—that Southern actually *be* in default—was met here.

[20]593 So.2d 195 (Fla.1992).

10

for damages is limited by the terms of the bond".[21]  The bond here contained no provision imposing liability on F & D for delay damages, and the district court may not imply such a provision.[22] Therefore, the district court erred in holding F & D liable for delay damages.  We are not persuaded by L & A's attempts to distinguish away the clear command of *Larkin*.[23]  Accordingly, we VACATE the award of delay damages against F & D.

*C. F & D's Liability for Attorney Fees*

Because F & D is not liable under the terms of its bond, it is not liable for consequential damages, such as attorney fees, flowing from Southern's breach of its contract.  Accordingly, to

_____

[21]*Id.* at 198.

[22]"[T]he liability of a surety should not be extended by implication beyond the terms of the contract, i.e., the performance bond".  *Id.*

[23]L & A first contends that the bond in *Larkin* contained different language from F & D's bond.  Even if that is true—and F & D contends that it is not—it is irrelevant.  *Larkin* did not turn on the language of the particular bond before the Court in that case, but rather stated what was obviously intended to be a general proposition of law.  Second, L & A contends that F & D's bond was ambiguous.  We conclude that the bond was not ambiguous, but even if it were, that is irrelevant to this issue.  *Larkin* plainly states that the express terms of the bond provide the sole measure of F & D's obligation.  If F & D's liability for delay damages is not "*expressed in the bond* ", *id.* at 198 (emphasis added, internal quotation omitted), F & D has no such liability.  Finally, L & A relies on footnote 2 of *Larkin* for the proposition that *Larkin* does not apply to cases involving a surety's liability for its own breach of its bond.  That is what *Larkin* says, but this is not that case.  L & A plainly seeks recovery from F & D for *Southern's* breach of the subcontract.  That is precisely the circumstance *Larkin* covers.

The district court similarly distinguished *Larkin* on grounds irrelevant to the holding of that case, but our discussion of L & A's objections to *Larkin* should dispose of the district court's reasoning as well.

11

the extent the district court held F & D liable for attorney fees, we VACATE the award.

III.

*A. Southern's Liability for Delay Damages*

We turn now to Southern's appeal. Southern challenges its liability for delay damages, arguing that L & A failed to prove that Southern's delay resulted in the project as a whole becoming overdue. Southern contends that, under Florida law, a subcontractor may not be held liable for delay damages unless the general contractor was late in completing the construction project. The cases Southern cites do not support that proposition, however.[24]

----

[24]*Fred Howland, Inc. v. Gore,* 152 Fla. 781, 13 So.2d 303 (Fla.1942), held simply that an owner cannot be awarded liquidated damages under a clause providing for damages in the event of a 30-day delay in completion of the project unless the owner proves that the condition precedent occurred; in other words, proves that the project was delayed for thirty days. Southern cites no similar clause in its contract with L & A.

*Lynch v. Florida Mining & Materials Corp.,* 384 So.2d 325 (Fla.App.1980), primarily involved damages for defective, not delayed, performance. *Lynch* did not hold that a general contractor's timely completion of the project absolves the subcontractor from liability for delay damages.

In *Tuttle/White Constr., Inc. v. Montgomery Elevator Co.,* 385 So.2d 98 (Fla.App.1980), the subcontractor sued the general contractor for payment under the subcontract, and the general contractor counterclaimed for late performance. The court held that the general contractor could offset against its liability the damages the subcontractor caused it by not timely performing. The court did not hold, however, that a delay in the completion of the overall project was a condition precedent to the subcontractor's liability for delayed performance.

Finally, *Haney v. United States,* 676 F.2d 584 (Ct.Cl.1982) involved a dispute between the owner and the general contractor. Obviously, a general contractor is not liable to the owner for delay damages unless it has untimely

12

In this case, Southern was held liable for its own delay in completing its obligation to L & A. Southern's untimely performance imposed unanticipated costs on L & A, and L & A is entitled to recover those costs regardless of whether it timely completed its own obligation to the Florida Department of Transportation.[25]

*B. Southern's Liability for Attorney Fees*

Southern challenges the district court's attorney fee award of $115,048, or half the $230,095 L & A requested. We review an award of attorney fees for abuse of discretion.[26] Southern cites no authority in its one-page argument on the attorney fee question, however, and we consider the challenge abandoned for being inadequately briefed.[27]

IV.

In conclusion, we VACATE the district court's judgment and award of damages against F & D in its entirety and RENDER judgment for F & D. We AFFIRM the award against Southern for $642,269 plus postjudgment interest as the district court calculated.

---

performed its obligation to the owner. *Haney* does not imply, however, that timely performance by the general contractor absolves the *subcontractor* from liability for untimely performing its own obligations.

[25]*See District Concrete Co. v. Bernstein Concrete Corp.,* 418 A.2d 1030, 1038 (D.C.1980).

[26]*Palmco Corp. v. American Airlines, Inc.,* 983 F.2d 681, 688 (5th Cir.1993).

[27]*See Dardar v. Lafourche Realty Co., Inc.,* 985 F.2d 824, 831 (5th Cir.1993); Fed.R.App.P. 28(a)(5).

13