791 So.2d 575 (2001)
DCC CONSTRUCTORS, INC., Appellant,
v.
RANDALL MECHANICAL, INC., et al., Appellee.
No. 5D00-3388.
District Court of Appeal of Florida, Fifth District.
August 10, 2001.
*576 James M. Talley of Fisher, Rushmer, Werrenrath, Dickson, Talley & Dunlap, P.A., Orlando, for Appellant.
Robert E. Morris of Robert E. Morris, P.A., Tampa for Appellee American Alliance Insurance Company.
No Appearance for other Appellee, Randall Mechanical, Inc.
PER CURIAM.
DCC Constructors, Inc. (DCC) appeals from a final summary judgment finding that American Alliance Insurance Company (American Alliance) had no responsibility under a construction performance bond issued to Randall Mechanical, Inc. (Randall) for alleged deficiencies in the installation of an HVAC system.
When alleged deficiencies appeared in the HVAC system installed by Randall under a subcontract with DCC, the owner of a newly constructed apartment building declared its general contractor, DCC, in default under the construction contract. DCC, in turn, notified Randall and American Alliance of the default and demanded correction of the deficiencies. Randall refused and DCC demanded performance by American Alliance. American Alliance also refused to perform and DCC sued it and the subcontractor for breach of the terms of the subcontract and performance bond. The relevant portions of the subcontract and bond are set forth in the Appendix.
The trial court was persuaded to enter summary judgment against DCC by American Alliance which argued that the obligations under the performance bond were never invoked because DCC never terminated Randall's subcontract.
As a general rule, a surety's liability on a bond is determined strictly from the terms and conditions of the bond agreement. See American Home Assurance Co. v. Larkin Gen. Hosp., Ltd., 593 So.2d 195 (Fla.1992). There is no language in the performance bond under examination in the instant case which requires termination of the subcontract as a condition precedent to American Alliance's surety obligations arising in the event of a default by Randall. The performance bond provides in part:
Whenever [Randall] shall be, and be declared by [DCC] to be in default under the subcontract [DCC], having performed [DCC's] obligation thereunder:
(1) [American Alliance] may promptly remedy the default subject to the provisions of paragraph 3 herein, or:
(2) [DCC] after reasonable notice to [American Alliance] may, or [American Alliance], upon demand of [DCC] may arrange for the performance of [Randall's] obligation under the subcontract subject to the provisions of paragraph 3 therein;
(3) The balance of the subcontract price, as defined below, shall be credited against the reasonable cost of completing the performance of the subcontract. If completed by [DCC] and the reasonable cost exceeds the balance of the subcontract price [American Alliance] shall pay to [DCC] such excess....
(R. 47).
Applying the language used in its bond, American Alliance's obligation as surety to perform Randall's obligations arose upon DCC's declaration of a default under the subcontract assuming that a valid act of default had occurred. The performance bond does not contain a definition *577 of "default," but the subcontract, which is incorporated by reference in the performance bond, contains extensive reference to the action or inaction that constitutes a default. Paragraph 17.1(d) references those acts or omissions by Randall which constitute a default under the subcontract and states: "Should Subcontractor at any time ... fail in the performance or observance of any of the covenants, conditions or other terms of this Subcontract...."
Clearly, Randall's alleged failure to complete the HVAC work at the project in accordance with the plans and specifications of the subcontract would constitute a breach of its warranty, and consequently, a default under the subcontract. American Alliance asserts that the remedies after default that are contained in paragraph 17.1 require that DCC first terminate Randall before American Alliance's obligations are activated.
More specifically, American Alliance argues that DCC's exclusive remedy is contained in subparagraph 17.1.3 and that provision requires DCC to terminate the subcontract before the surety is required to perform. We disagree. Subparagraph 17.1.3 is but one of the four options given to DCC that it may choose in the event of Randall's default. Subparagraph 17.1.3 gives DCC the option of terminating the subcontract in the event of a default by Randall without waiving its rights against the surety. The provision is designed to protect DCC from any claim by the surety of waiver in the event DCC chose to pursue termination of the subcontract. It does not require termination of the subcontract with Randall as a condition precedent to any action on the performance bond.
American Alliance relies upon L & A Contracting Co. v. Southern Concrete Services, Inc., 17 F.3d 106 (5th Cir.1994) to support its argument that termination of the subcontract was necessary before it was required to perform under its bond. However, L & A Contracting is distinguishable. The Fifth Circuit held that there was need for a clear, direct declaration of default by the general contractor in order to inform the surety that its principal is in material breach of its obligations under the subcontract. In that case, the general contractor gave multiple notices to the subcontractor and surety of the subcontractor's repetitive defaults and after each notice, the subcontractor would cure the default. The decision, while indicating that a legal default exists when a material breach is committed of such seriousness that it would justify termination of a subcontract, does not hold that liability under a performance bond only occurs when the general contractor actually terminates the subcontract. In the instant case and unlike the facts in L & A Contracting, DCC repeatedly notified both Randall and American Alliance in writing that Randall was in default, that Randall had failed to cure the default, and that it would look to the performance bond for recompense. Randall never attempted to cure the default. Additionally, the evidence in the instant case indicates that Randall did not fulfill its obligations under the subcontract; the subcontractor in L & A Contracting eventually satisfied its obligations and the action was for damages incurred because of the delay in performance.
We conclude that the trial court erred by entering summary judgment after concluding that DCC had to first terminate Randall before American Alliance's obligations arose. The judgment is vacated and the cause is remanded for further proceedings consistent with this decision.
JUDGMENT VACATED; REMANDED.
PETERSON, GRIFFIN and PALMER, JJ., concur.

*578 APPENDIX

RELEVANT SUBCONTRACT & PERFORMANCE BOND PROVISIONS
The subcontract agreement, authored by DCC and made a part of the bond by reference, addresses Randall's warranty obligations at Article 13 of Part II:
13.1 Subcontractor warrants that the Work shall be of good quality, new and shall be free from defects and shall conform to and meet the requirements of the Contract and the Contract Documents... Subcontractor agrees to make good, to the satisfaction of the Owner, Architect, and Contractor any portion or portions of the Work which prove non-conforming or defective within one year (or such longer period as may be specified in the Contract or Contract Documents or by applicable law) from the date of Substantial Completion; provided, however, that this obligation to make good shall in no respect reduce the duration of aforesaid warranty which shall exist for the longest period provided by law, nor shall the Subcontractor's foregoing obligations exclude, limit or minimize other warranties, relief, or remedies which are available to Contractor provided by law or under the Subcontract or under the Contract Documents.
Contractual provisions relating to default are located at Article 17, Part II
17.1 Should Subcontractor at any time: (a) fail or appear to Contractor to be unable to supply, or appear to be unable to continue to supply, or appear to be unable to supply in the future the labor, materials, equipment, supervision and other things required of it in sufficient quantities and of sufficient quality to perform the Work with skill, conformity, promptness and diligence required hereunder; (b) cause or threaten, for any reason or cause, stoppage or delay of or interference with the Project work; (c) become insolvent; or (d) fail in the performance or observance of any of the covenants, conditions or other terms of this Subcontract, or the applicable provisions of the Contract or Contract Documents, then in any such event, each of which shall constitute a default hereunder by Subcontractor, Contractor shall, after giving Subcontractor written notice of default and forty-eight (48) hours within which to cure, have the right to exercise any one or more of the following remedies, in addition to all other remedies available by law to Contractor:
17.1.1 Require that Subcontractor utilize, at its own expense, overtime labor (including Saturday and Sunday work) and additional shifts as necessary to overcome the consequence of any delay or prejudice to the Project of any interruption to the applicable Construction Progress Schedule attributable to Subcontractor's default;
17.1.2 Remedy the default by whatever means Contractor may deem necessary or appropriate, including, but not limited to, correcting, furnishing, performing or otherwise completing the Work, or any part thereof, by itself or through others (utilizing where appropriate any materials and equipment previously purchased for that purpose by Subcontractor), and deducting the cost thereof (plus an allowance for administrative burden equal to fifteen percent (15%) of such costs) from any moneys due or to become due to Subcontractor on this Project and under any other Subcontract or engagement between Contractor and Subcontractor, on this or any other Project; with Contractor to recover as damages all such costs *579 and damages not paid to Contractor by such set-offs;
17.1.3 Terminate Subcontractor's performance under this Subcontract, without thereby waiving or releasing any rights or remedies against Subcontractor or its sureties, and by itself or through others take possession of the Work, and all materials, equipment, facilities, plant, tools, scaffolds and appliances of Subcontractor relating to the Work, for the purposes of completing the Work and securing to Contractor the payment of its costs (plus an allowance for administrative burden equal to fifteen percent (15%) of such costs) and other damages under the Subcontract and for the breach thereof, it being intended that Contractor shall, for the stated purposes, be the assignee of an have a security interest in the property described above to the extent located on the Project site (and Contractor may at any time perfect its rights to such security interest by filing a financial statement under applicable law); and
17.1.4 Recover from Subcontractor, in addition to all delay damages Contractor is entitled to recover against Subcontractor under this Subcontract, full indemnification for all losses, damages, penalties and fines, whether actual or liquidated, direct or consequential, and all reasonable coss [sic] of investigation and consulting and attorneys' fees suffered, incurred, and expected to be incurred by Contractor, including any losses, damages, and costs, including delay damages, which Contractor incurs to the Owner, by reason of or as a result of Subcontractor's Default.
Paragraph 17.2 expressly provides that these four remedies "shall be considered separate and cumulative and shall be in addition to every other remedy given hereunder of under the Contract Documents, or now or hereafter existing at law or in equity.
PERFORMANCE BOND
NOW THEREFORE, THE CONDITION OF THIS OBLIGATION is such that, if Principal [Randall] shall promptly and faithfully perform said subcontract, then this obligation shall be null and void; otherwise it shall remain in full force and effect.
Whenever Principal shall be, and be declared by Obligee [DCC] to be in default under the subcontract, the Obligee having performed Obligee's obligations thereunder:
(1) Surety [American Alliance] may promptly remedy the default subject to the provisions of paragraph 3 herein, or;
(2) Obligee after reasonable notice to Surety may, or Surety upon demand of Obligee may arrange from the performance of Principal's obligation under the subcontract subject to the provisions of paragraph 3 therein;
(3) The balance of the subcontract price, as defined below, shall be credited against the reasonable cost of completing performance of the subcontract. If completed by the Obligee, and the reasonable cost exceeds the balance of the subcontract price, the Surety shall pay to the Obligee such excess, but in no event shall the *580 aggregate liability of the Surety exceed the amount of this bond....