**BALFOUR BEATTY CONSTRUCTION, INC., a Delaware Corporation, Plaintiff,**

v.

**COLONIAL ORNAMENTAL IRON WORKS, INC., a pennsylvania Corporation d/b/a Colonial Iron Works, Engineered Products, Inc., a Pennsylvania Corporation, National Surety Corporation, an Illinois Corporation, Steward Machine Company Inc., an Alabama Corporation, Defendants.**

**COLONIAL ORNAMENTAL IRON WORKS, INC., a pennsylvania Corporation d/b/a Colonial Iron Works, Engineered Products, Inc., a Pennsylvania Corporation, Third–Party Plaintiffs,**

v.

**LANDSTAR INWAY, INC., a Illinois Corporation, Third–Party Defendant.**

**BALFOUR BEATTY CONSTRUCTION, INC., a Delaware Corporation, Third–Party Plaintiff,**

v.

**STEWARD MACHINE COMPANY, INC., an Alabama Corporation, Third–Party Defendant.**

Civil No. 3:96CV00345 (AVC).

United States District Court, D. Connecticut.

Oct. 1, 1997.

Ann H. Rubin, Susan S. Chambers, Carmody & Torrance, New Haven, CT, James E. Moye, Gregory S. Martin, Moye, O'Brien, O'Rourke, Hogan & Pickert, Orlando, FL, for Balfour Beatty Const., Inc.

James N. Royster, Michael C. Ryan, Joseph B. Mathieu, Michelson, Kane, Royster & Barger, P.C., Hartford, CT, Kurt Siuzdak, Naugatuck, CT, for Colonial Ornamental Iron Works, Inc. and Engineered Prod., Inc.

Dennis C. Cavanaugh, Gregory Robert Faulkner, Halloran & Sage, Hartford, CT, for National Surety Corp.

William J. Egan, New Haven, CT, for Steward Machine Co., Inc.

John Jay Pavano, Thomas P. Willcutts, Willcutts & Assoc., Hartford, CT, for Landstar Inway, Inc.

James E. Moye, Gregory S. Martin, Moye, O'Brien, O'Rourke, Hogan & Pickert, Orlando, FL, for Metro North Commuter R. Co.

Susan S. Chambers, Carmody & Torrance, New Haven, CT, James E. Moye, Moye, O'Brien, O'Rourke, Hogan & Pickert, Orlando, FL, for Federal Ins. Co. and American Home Assur. Co.

*RULING ON THE DEFENDANT, NATIONAL SURETY CORPORATION'S MOTION FOR SUMMARY JUDGMENT*

COVELLO, District Judge.

This is an action for damages in which the plaintiff, Balfour Beatty, Inc., (Beatty), alleges that the defendants, Colonial Iron Works (Colonial) and Engineered Products, Inc. (EPI) are liable for breach of contract, negligent misrepresentation, fraudulent misrepresentation, and violations of the Connecticut Unfair Trade Practices Act (CUTPA), Conn. Gen.Stat. § 42–110b(a). The complaint also alleges that the defendant, National Surety Corporation ("NSC"), "is obligated under the performance bond to reimburse Balfour Beatty for the damages it has sustained." The defendant, NSC, now moves for summary judgment, claiming there is no genuine

issue as to any material fact, and that it is entitled to judgment as a matter of law.

The issue presented is whether the plaintiff provided sufficient notification of the principal's default to the surety defendant in order to incur the defendant's liability under the terms of the performance bond. For the following reasons, the court concludes that the plaintiff did not sufficiently notify the surety defendant of the principal's default. Accordingly, the surety's motion for summary judgment is granted.

**FACTS**

Examination of the complaint, exhibits, and the Rule 9 statements of material fact accompanying the motion for summary judgment, and the responses thereto, discloses the following undisputed material facts. In January 1993, the plaintiff, Balfour Beatty, as a general contractor, entered into a construction contract with Metro–North Commuter Railroad for the construction of the Peck Drawbridge and Bridgeport Viaduct in Bridgeport, Connecticut. In January 1994, the plaintiff entered into contract with Colonial Ornamental Iron Works, Inc. ("Colonial"), for the structural steel for the railway bridge.

The contract stated that, "[i]t is the intent of this Purchase Order to ensure that the Colonial Iron Work provides Balfour Beatty with an adequate, continuous and uninterrupted supply of materials according to the schedule furnished in advance by Balfour Beatty, with a delivery completion date of August 15, 1995." The purchase order further stated that "this schedule is subject to revision as dictated by conditions on this project. Balfour Beatty will provide updated schedules as needed." The purchase order also contained provisions with regard to modifications [1] and delivery.[2]

---

1. With respect to modifications, the contract provided as follows:
   MODIFICATIONS: Seller shall make no substitutions or changes in this order without written authority executed in the same manner and on the same terms as the original order.

2. With respect to delivery, the contract provided as follows:

DELIVERY: Deliveries shall be made at the time and in the manner specified. Time is of the essence. If deliveries are not made at the time agreed upon, Buyer reserves the right to modify the delivery time, to cancel or to purchase elsewhere, and hold Seller accountable therefor.

The defendant argues that "the plaintiff demanded that [Colonial] provide a Performance Bond in consideration for agreeing to [a] revised payment and performance schedule." On August 10, 1995, the defendant, National Surety Corporation, posted the performance bond for Colonial, the principal, who had, at that time, only completed 65% of the contract.[3]

The language of the performance bond specifically required that,

> "whenever Principal [Colonial] shall be, *and declared by Obligee to be in default* under the subcontract, the Obligee having performed Obligee's obligations thereunder:
>
> 1) Surety [NSC] *may promptly remedy* the default, subject to the provisions of paragraph 3 herein, or;
>
> 2) Obligee *after reasonable notice to Surety* may, or Surety upon demand of obligee may arrange for the performance of Principal's obligation under the subcontract subject to the provisions of paragraph 3 herein;
>
> 3) The balance of the subcontract price, as defined below, shall be credited against the reasonable cost of completing performance of the subcontract . . . . (emphasis added).

3. Thereafter, the plaintiff released $500,000, originally withheld to cover damages, to Colonial.

4. The August 17, 1995 letter provides as follows: The purchase order required complete delivery by August 15, 1995. This contractual obligation has not been met. As you are aware, Balfour Beatty Construction, Inc., is and has been ready to receive the material. As you are also aware, Balfour Beatty Construction, Inc., is being delayed in finishing the project as planned. Balfour Beatty Construction, Inc., intends to pursue any and all damages which it incurs as a result of [Colonial's] late performance. Without in any manner waiving our ability and intention to deduct from the total purchase order price all or part of the damages, losses or expenses we incur, if any, resulting from your company's failure to comply with the delivery requirements of the purchase order, we agree, subject to the above, to the following payment breakdown contingent upon your company's timely compliance with the performance dates attached hereto. . . .

5. The December 19, 1995 letter provides as follows:

The plaintiff claims that two letters that it sent on August 17, 1995[4] and December 19, 1995,[5] gave NSC notice that it considered Colonial to be in default.

On February 29, 1996, the plaintiff filed the within complaint seeking, as to defendant NSC, payment under the bond NSC issued in behalf of Colonial.

## STANDARD

Summary judgment is appropriately granted when the evidentiary record shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. In determining whether the record presents genuine issues for trial, the court must view all inferences and ambiguities in a light most favorable to the non-moving party. See *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). A plaintiff raises a genuine issue of material fact if "the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Rule 56 "provides that the mere existence of some alleged factual dispute between the parties will not defeat an other-

By letter dated August 10, 1995 you forwarded a Subcontract Performance Bond Form A for [Colonial] in the amount of $2,946,634. You signed the bond as attorney in fact on behalf of [NSC].

The original delivery schedule required complete delivery by August 15, 1995. Such date was not met. With consent of surety and without Balfour Beatty Construction, Inc. waiving any rights, the delivery schedule and payment schedule were modified pursuant to certain terms and conditions which are contained in a letter dated August 17, 1995. Such letter was forwarded to [Colonial] with a copy to the surety. Please find enclosed a courtesy copy. Also find enclosed letters dated November 3, November 24, (two letters), December 4 and December 15, 1995 from Balfour Beatty Construction, Inc. to [Colonial]. As may be seen, [Colonial] continues to fail to perform in accordance with its contractual obligations. Balfour Beatty Construction, Inc. intends to pursue any and all damages it incurs as a result of [Colonial's] failure to perform its obligations in a timely manner, including all remedies against the surety.

wise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Liberty Lobby,* 477 U.S. at 247–48, 106 S.Ct. at 2510 (emphasis in original). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims ... [and] it should be interpreted in a way that allows it to accomplish this purpose." *Celotex v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

## DISCUSSION

■ The defendant states that the bond, by its express terms, provided for notice of default to NSC and argues that "the plaintiff never declared Colonial in default, never provided notice of such declaration of default to NSC, never terminated the contract with Colonial, never requested that the Surety step in and complete performance, and never gave notice to NSC that the plaintiff intended to arrange for the performance of Colonial's obligations."

The plaintiff responds that: 1) "NSC had actual notice of Colonial's default, because the delivery provision set forth in the purchase Order was already in breach at the time NSC issued the bond;" 2) the plaintiff "did provide notice of default to NSC in the form of letters, one dated August 17, 1995 and the other December 19, 1995;" and 3) "NSC was not entitled to notice of default, because the bond does not expressly provide for such notice ."

Despite its claim that the defendant had actual notice of default, the plaintiff states, in its additional statement of material facts, that a representative of NSC was misled into "believing that the forged delivery schedule was indeed an agreed revised delivery schedule with Balfour Beatty ... and relied on the forged revised delivery schedule in issuing the bond."

The court concludes that the defendant did not have actual knowledge that Colonial was in default. Proper notification by the plaintiff would have alerted the defendant to the fact that the principal was in default.

In *L & A Contracting Co. v. Southern Concrete Services, Inc.,* 17 F.3d 106 (5th Cir.1994), the U.S. Court of Appeals addressed the issue of what constitutes a sufficient notice of default. The court stated as follows:

> serious legal consequences attend a declaration of default, particularly in cases such as this involving multi-million-dollar construction projects. Before a declaration of default, sureties face possible tort liability for meddling in the affairs of their principals. After a declaration of default, the relationship changes dramatically, and the surety owes immediately duties to the obligee. Given the consequences that follow a declaration of default, it is vital that the declaration be made in terms sufficiently clear, direct, and unequivocal to inform the surety that the principal has defaulted on its obligations and the surety must immediately commence performing under the terms of its bond.

The facts of *L & A* are strikingly similar to those in the present case. Both private performance bonds had identical express conditions and were issued on behalf of principals who were suppliers to general contractors on multi-million dollar bridge contracts. In both cases, the general contractor sent letters to the sureties, but the principal was never declared in default, nor was the contract with the principal terminated.

In the present case, the letters that the plaintiff sent to the defendant discussed only Colonial's delays. One letter dated December 19, 1995, states that "[t]he original delivery schedule required complete delivery by August 15, 1995. Such date was not met. With the consent of surety and without Balfour Beatty construction, Inc. waiving any rights, the delivery schedule and payment schedule were modified pursuant to certain terms and conditions which are contained in a letter dated August 17, 1995." However, the defendant did not receive the August 17, 1995 letter and contends that "there is no written or oral communication from the plaintiff which declares Colonial in default."

■ "Under a performance and completion bond, a surety generally has two options upon its principal's default. First, the surety

may undertake to complete the principal's work itself; this obligation may be satisfied by the surety funding the principal to complete its work. Second, the surety has the option of paying the obligee under the bond its damages, essentially, the obligee's cost of completion." *Granite Computer Leasing Corp. v. The Travelers Indemnity Co.*, 894 F.2d 547 (2d Cir.1990).

Performance bond requirements for notice of default and demand that the surety step in and perform under the bond must be met before an obligee can recover damages under the performance bond. *City of New Haven v. Eastern Paving Brick Co.*, 78 Conn. 689, 63 A. 517 (1906). Further, the language of the performance bond required: 1) that the principal be in default; and 2) that the obligee declare the principal to be in default so as to allow the surety to step in and take over the principal's obligations under the contract. The plaintiff in the present case allowed Colonial to complete the project, thereby denying the defendant the opportunity to exercise any of its options under the performance bond.

The court concludes that the plaintiff did not declare the principal to be in default. The fact remains that the letters, which only mention Colonial's delay in performance, did not provide sufficient notification to the defendant that the principal was in default. As a result, the plaintiff failed to meet a necessary condition for NSC's liability under the bond and the defendant's motion for summary judgment is granted.

## CONCLUSION

For the aforementioned reasons, the motion for summary judgment (**document 111**) is granted.