The SCHOOL BOARD OF ESCAMBIA COUNTY, FLORIDA, Plaintiff,

v.

TIG PREMIER INSURANCE COMPANY, Defendant, Third–Party Plaintiff,

v.

United Southco, Inc., et al., Third–Party Defendants.

No.  3:99–CV–334/LAC.

United States District Court, N.D. Florida, Pensacola Division.

May 8, 2000.

Ed Fleming, Mike Stebbins, Pensacola, FL, for Plaintiff.

David Metcalf (TIG), Tallahassee, FL, John Trawick (Southco), Pensacola, FL, for Defendant.

### SUMMARY JUDGMENT

COLLIER, District Judge.

Pending before the Court is Defendant's motion for summary judgment and documents in support thereof (doc. 50). Plaintiff timely filed a memorandum and evidentiary materials in opposition (doc. 57). The Court has taken the motion for summary judgment under advisement (doc. 53) and is now prepared to rule on Defendant's motion. For the reasons stated below, Defendant's motion for summary judgment is GRANTED.

## I. STATEMENT OF THE CASE

### A. Background

On May 26, 1994, Plaintiff School Board of Escambia County ("School Board") contracted with United Southco, Inc. ("Southco") to provide demolition and waste removal work on the A.V. Chubbs Middle School Project in Escambia County, Florida (the "demolition project"). Pursuant to Section 255.05 of the Florida Statutes, and as a condition of the contract, Southco posted a performance bond conditionally covering work performed under the Contract. TIG Premier Insurance Company ("TIG") provided the performance bond, naming the School Board as the obligee and Southco as the principal. Southco completed the contract work and a final payment was made to Southco on December 20, 1995.

Thereafter, the School Board prepared to build a new school on the site. In connection with preparations to build the new school, Larry M. Jacobs & Associates submitted a Report of Subsurface Investigation of the Proposed N.B. Cook Elementary School site dated August 21, 1996 ("Jacobs Report"). The Jacobs Report states that "test borings encountered different and erratic subsurface conditions" consisting of buried asphalt, concrete, brick and topsoil and recommended that "test pits be performed ... to further evaluate the conditions present and to determine the horizontal and vertical extent of unsuitable material requiring undercutting." (Def.exh. 67).

In September 1997, excavation for and construction of the N.B. Cook Elementary School began on the site where the A.V. Chubbs Middle School had been demolished. During the course of construction, 12,000 cubic yards of demolition debris was uncovered in deep isolated pits some 20 to 30 feet below grade. The School Board issued a change order to the N.B. Cook construction contract and the work was completed by December of 1997.

The School Board notified TIG of a potential claim against the Southco performance bond on February 18, 1999. The conditions of the Bond include the following remedial provisions:

> Whenever Contractor shall be, and declared by Owner (School Board) to be in default under the Contract, the Owner having performed Owner's obligations thereunder, the Surety may promptly remedy the default, or shall promptly
>
> 1) Complete the Contract in accordance with its terms and conditions, or
>
> 2) Obtain a bid or bids for completing the Contract in accordance with its terms and conditions, and upon determination by Surety of the lowest responsible bidder, arranges for a contract between such bidder and Owner.

(Complaint, exh. B).

### B. Procedural History

The School Board filed a Complaint in the Circuit Court for Escambia County, Florida based on breach of the performance bond. TIG removed the action to this Court and now seeks summary judgment.

### II. MOTION FOR SUMMARY JUDGMENT

### A. Standard

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, show that no genuine issue of material fact exists and that the party moving is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *Id.*

### B. Discussion

A performance bond is a contract, and obligations arising out of the bond are subject to general contract law. *American Home Assurance Co. v. Larkin Gen. Hosp.,* 593 So.2d 195, 196 (Fla.1992). General contract law requires that summary judgment be granted when the language of a contractual provision is clear and unambiguous. *Banco Latino Int'l v. Padial,* 729 So.2d 483 (Fla. 3d DCA 1999); *Colony Square Co. v. Prudential Ins. Co. of Am.,* 843 F.2d 479, 481 (11th Cir.1988).

When the unambiguous language of a contract sets forth the manner in which a party must exercise a remedy in the event of a default, the party is bound by and must strictly adhere to the language. *Colony Square Co.,* 843 F.2d at 481. Accordingly, failure to adhere to a performance bond notification requirement is a material breach, resulting in the loss of an obligee's rights under the bond. *See Insurance Co. of N. Am. v. Metropolitan Dade County,* 705 So.2d 33, 35 (Fla. 3d DCA 1997). In this case, the School Board admits that it did not perform its obligation of notifying TIG of a breach of the demolition project.

The School Board argues that it did not become aware of the breach of contract until the School Board's construction contract expert, Albert Phillips, reviewed the School Board files in the October 1998 time frame. However, several of the School Board's agents admitted under oath that they knew of the buried debris when the geotechnical studies were prepared in 1995 and 1996. (Smith 25:19 through 26:5; Jacobs 14:6 through 14:20 and 15:20 through 16:5). When the N.B. Cook project was modified to include removal of the debris, the School Board was on constructive notice of the breach. At that point, a contractual duty to notify TIG arose.

The School Board claims that it was commercially impracticable for the general contractor to stop the excavation, notify TIG of the breach, have TIG investigate

the breach, and then perform its obligations under the performance bond (doc. 57:12). However, failure to notify TIG results in a loss of the School Board's rights under the performance bond. When it became apparent that Southco breached its contract, the School Board, assuming it wanted to protect its rights under the performance bond, could not contract with another party to remove the debris prior to giving TIG notice. Under the terms of the Bond, the School Board was required to notify TIG of Southco's alleged default and give TIG an opportunity to remedy the default. Failure to give TIG notice deprived TIG of its contractual right to "minimize [its] damages." *Metropolitan Dade County,* 705 So.2d at 35.

Courts have consistently held that an obligee's action that deprives a surety of its ability to protect itself pursuant to performance options granted under a performance bond constitutes a material breach, which renders the bond null and void. *See L & A Contracting Co. v. Southern Concrete Serv., Inc.,* 17 F.3d 106, 111 (5th Cir.1994); *Balfour Beatty Constr. Inc. v. Colonial Ornamental Iron Works, Inc.,* 986 F.Supp. 82, 86 (D.Conn.1997); *Metropolitan Dade County,* 705 So.2d at 34–35. Under the facts of this case, the School Board's failure to timely notify TIG of Southco's breach renders the performance bond null and void. While the School Board may have a claim against Southco for breach of contract, the School Board forfeited its rights against TIG under the performance bond.

■ The School Board cites *R.C. Walters Co., Inc. v. Debower,* 191 Neb. 544, 216 N.W.2d 515, 517 (1974) for the proposition that TIG must show it was prejudiced or damaged by the School Board's failure to provide notice. However, in *DeBower,* prejudice to the surety was not in issue. In *DeBower,* there was uncontradicted evidence that the surety, had it employed another contractor, might have salvaged the project. The Court does not read *DeBower* to place a burden on the non-defaulting surety to come forth with affirmative evidence that it was "prejudiced." Here, the School Board waited an inordinate amount of time, after the breach was discovered and cured, before providing TIG notice. TIG did not have the opportunity to cure the breach or exercise its rights under the performance bond. In essence, TIG did not have the opportunity to gather the data necessary to demonstrate prejudice. Under these circumstances, prejudice must be presumed.

### III. SUMMARY

The Court's ruling in this matter may be summarized as follows, and IT IS HEREBY ORDERED:

1. TIG Premier Insurance Company's motion for summary judgment (doc. 50) is GRANTED. Plaintiff takes nothing by this action and goes without day.

2. Plaintiff's motion to strike affidavits in support of motion for summary judgment (doc. 76) is GRANTED.

3. The Clerk of Court is directed to enter summary judgment in favor of Defendant TIG Premier Insurance Company.