DECISION
Defendant and Third-Party Plaintiff Cardi Corporation (Cardi) filed a motion for reconsideration of this Court's April 5, 2010 Decision which granted summary judgment to Third-Party Defendant Western Surety Company (Western), discharging Western from any liability under the parties' Performance Bond.See Raito, Inc. v. Cardi Corp., 2010 R.I. Super. WL 1422002 (April 5, 2010). In that Decision, this Court held that the language in Paragraph 3.1 of the Performance Bond created a condition precedent, obligating Cardi to notify *Page 2 
Raito and Western that Raito's performance was unsatisfactory and Cardi was considering declaring a default and terminating the Subcontract.
 I Facts Travel
On or about August 1, 2003, Cardi, as general contractor, entered into a contract (the Contract) with the State of Rhode Island, acting through the Rhode Island Department of Transportation for the construction of a new arch-span bridge over the Providence River on Interstate I-95 (the Project). Cardi, in connection with the Project, entered into a subcontract (the Subcontract) with Raito to install a series of concrete foundation shafts for the new bridge. With regard to the Subcontract, Raito, as principal, and Western, as surety, executed Payment Bond No. 929298884 (Payment Bond) and Performance Bond No. 92929884 (Performance Bond).
Cardi alleges that during the course of the work, Raito failed to perform the work in a timely and acceptable manner which resulted in delays to the Project and costs and damages to Cardi. Despite the alleged delays, Cardi never gave notice that it was considering declaring a default or attempted to arrange a conference with Western and Raito, but rather "back-charged" any delay costs against amounts which would have been due to Raito for its work under the Subcontract. Raito then filed the instant action to recover monies allegedly due from Cardi in connection with work performed as a subcontractor on the Project. Cardi counterclaimed against Raito to recover damages caused by Raito's alleged failure to timely and effectively perform such work. Additionally, both Raito and Cardi have brought actions against each other's sureties. This Court granted Western summary judgment on April 5, 2010, and Cardi filed a timely motion for reconsideration on June 4, 2010. *Page 3 
 II Standard of Review
The Rhode Island Superior Court Rules of Civil Procedure, similar to the Federal Rules of Civil Procedure, do not specifically provide for motions to reconsider. School Committee of City ofCranston v. Bergin-Andrews, 984 A.2d 629, 649 (R.I. 2009). However, the Supreme Court of Rhode Island applies a liberal interpretation of the rules, and the Court must "look to substance, not labels." Sarni v. Melocarro,113 R.I. 630, 636, 324 A.2d 648, 651 (1974). It is well settled that a motion to reconsider should be treated as a motion to vacate under Super. R. Civ. P. 60(b). School Committee of City ofCranston, 984 A.2d at 649 (citing Keystone ElevatorCo. v. Johnson Wales University,850 A.2d 912, 916 (R.I. 2004)). Rule 60(b) provides in relevant part that under certain circumstances "[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from final judgment, order, or proceeding. . . ." A motion to vacate under Rule 60(b) "is addressed to the trial justice's sound judicial discretion and `will not be disturbed on appeal, absent a showing of abuse of discretion.'" KeystoneElevator Co., 850 A.2d at 916 (quoting Crystal RestaurantManagement Corp. v. Calcagni, 732 A.2d 706, 710 (R.I. 1999)).
 III Discussion
In support of its motion for reconsideration, Cardi first asserts that § 6.1 and § 6.3 of the Performance Bond allow recovery without any action under § 4. However, the plain language of § 6 states that the Surety's responsibilities arise only "[a]fter the Owner has terminated the contractor's right to complete the Construction Contract, and if the Surety elects to act under §§ 4.1, 4.2, or 4.3." Cardi construes the preceding sentence as only applicable to actions arising under §§ 4.1, 4.2, or 4.3. It contends that actual termination is not required for relief under §§ 4.4, 5, *Page 4 
or relief under § 1, which guarantees the entire contract. However, this Court finds such a reading unavailing since § 4.4 first requires the completion of the conditions enumerated in § 3, which includes the issuance of a default and termination pursuant to § 3.2. Here, Cardi never properly issued Raito a notice of default and termination as this Court deemed is required by the Performance Bond.
Further, § 5 states that "[i]f the Surety does not proceed as provided in Section 4 with reasonable promptness, the Surety shall be deemed to be in default on this Bond." Again, Cardi could only proceed under § 4 once it had satisfied the conditions specified in § 3. Moreover, § 1 of the Performance Bond states that "[t]he Contractor and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors, and assigns to the Owner for the performance of this Construction Contract, which is incorporated herein by reference." As the Court noted in its Decision, the language of the Construction Contract, "does not conflict with or negate Cardi's obligations under Paragraph 3." Under the Performance Bond, "there is a period, before Cardi decides whether or not to terminate, during which time if Cardi is dissatisfied with Raito's performance, it should give Raito the opportunity to improve and properly comply with the terms of the Subcontract." After nearly four years of delays and problems causing Cardi to assess backcharges in the amount of $2,802,191.39, Cardi did not give Raito notice that it was dissatisfied with the work product nor did it provide Raito with an opportunity to improve and properly comply with the terms of the Subcontract.
In addition, Cardi argues that the Court's refusal to give legal effect to a default notice that was issued after the completion of the work is not supported by the Bond or applicable law. Cardi cites case law where claims arose for defective work or latent defects after the given projects were completed. See AgGrow Oils,LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, *Page 5 276 F. Supp. 2d. 999, 1016 (D. N.D. 2003) aff'd by420 F.3d 751 (8th Cir. 2005). Seealso, The School Board of Escambia County v. TIG PremierIns. Co., 110 F. Supp. 2d 1351 (N.D. Fla. 2000); HuntersPointe Partners Ltd / P'ship v. United States Fid. Guar. Co.,194 Mich. App. 294 (1992). In each of these cases, it is understandable that courts would hold performance bond sureties liable after completion of the project because latent defects and defective work often are not discerned until after the project is completed.
There is no analogue between latent defects or defective work and the type of delay and indemnity claims that arise in this case. Here, Cardi failed to notify Western of its dissatisfaction with Raito's work and their repeated delays, which resulted in more than $2 million in "backcharges." As indicated in the Decision, courts have consistently held that a bond holder's action that deprives a surety of its ability to protect itself pursuant to performance options granted under a performance bond constitutes a material breach, which renders the bond null and void. SeeSt. Paul Fire Marine Ins. Co. v. City of Green River,93 F. Supp. 2d 1170, 1178 (D. Wyo. 2000) (citing L AContracting Co. v. Southern Concrete Servs.,17 F.3d 106, 111 (5th Cir. 1994); Balfour Beatty Constr. Inc. v.Colonial Ornamental Iron Works, Inc.,986 F. Supp. 82, 86 (D. Conn. 1997). Because Western was denied an opportunity to exercise any of the remedial options granted to it under the Performance Bond, Cardi should not recover under such bond. See Balfour, 986 F. Supp. at 86.
Cardi maintains that there is no basis in the Bond for the Court's holding that the filing of Western's summary judgment motion eliminates Cardi's right to claim against the Bond. The Performance Bond does not provide a deadline for providing Western with a notice of default and termination. However, courts can establish "reasonable" deadlines when the parties fail to do so in a written agreement. See e.g. Developers Sur. and Indem. Co. v.Dismal River Club, *Page 6 LLC, 2008 WL 2223872 (D. Neb. 2008). Such reasonableness is generally measured on the basis of prejudice suffered by a party. Id. In determining whether notice was given within a reasonable time, our Supreme Court has found that "the length of delay in giving the notice, the reasons for the delay and the probable effect of the delay on the insurer" are relevant considerations. Pickering v. American Employers Ins. Co.,109 R.I. 143, 282 A.2d 584, 592-93 (R.I. 1971). Here despite continually issuing backcharges against Raito for a period of four years, Cardi failed to notify Western until after the filing of the present action. Furthermore, Cardi demanded that Raito make payment to Cardi in the amounts due, gave notice of a pending default and termination of Raito, and requested a meeting with Raito and Western on August 13, 2009, more than two years after Raito commenced the instant action against Cardi. Cardi not only delayed in providing notice to Western, but also waited until the completion of the contract, denying Western any ability to limit its liability. Accordingly, the Court is justified in denying Cardi recovery pursuant to the Performance Bond.
Additionally, Cardi claims that the Court's Decision imposes conditions which exceed the Bond requirements and makes findings that are unsupported by the summary judgment evidence. Cardi argues that it had no obligation to give notice of the possibility of default or of the delays which gave rise to its alleged damages. According to Cardi, there is no evidence in the summary judgment record that Cardi was "considering a default" or that it "deemed Raito to be untimely and improperly performing."
In this matter, Cardi filed a counterclaim against Raito to recover damages caused by Raito's alleged failure to timely and effectively perform work under the subcontract resulting in the backcharges. Under Article IX(a) of the Subcontract, if the Subcontractor is refusing or failing to diligently perform its work, the Owner, after providing notice and an opportunity to *Page 7 
cure, may terminate the Subcontractor. Article IX(b) mandates that if the Owner decides not to terminate after satisfying the requirements of paragraph (a), the Subcontractor must continue the work and he and his sureties will be liable for any resulting damages.
The Performance Bond contains a similar termination provision to the one contained in the Subcontract. Section 3 requires that Cardi notify both the Subcontractor and the Surety that it is considering declaring a default and to request and attempt to have a conference with both parties to discuss methods of performance under the Subcontract. If after such actions performance is still unacceptable, the Owner may declare a default and formally terminate the Subcontractor. As discussed in the Decision, the term "consider" in this context means "[t]o think carefully about" and "suggests objective reflections and reasoning." The American HeritageDictionary of the English Language 392 (4th ed. 2000);see also People v. TruSport Pub. Co.,160 Misc. 628, 636, 291 N.Y.S. 449, 457 (1936) (finding that "[t]o consider a proposition of any kind means to think about it, to reflect upon or ponder it").
In this matter, Raito's performance under the Subcontract was unsatisfactory, resulting in millions of dollars in backcharges. However, Cardi maintains that it never once thought about default and that it had no duty to alert Western of the charges for which it might be responsible or attempt to arrange a conference pursuant to § 3.1. The Court is not persuaded by such an argument. The evidence before the Court is that Cardi considered Raito to not be performing adequately and charged Raito $2,802,191.39 in backcharges. Such actions invoke § 3 of the Performance Bond and required Cardi to notify both Raito and Western and attempt to arrange a conference with both parties to discuss methods of performance under the Subcontract.
As noted by the Fifth Circuit Court of Appeals, a surety's responsibilities change dramatically when a declaration of default is actually issued. Prior to default, the surety faces *Page 8 
potential tort liability for meddling in the affairs of the principal. L A Contracting Co. v. Southern Concrete Services,Inc., 17 F.3d 106, 111 (5th Cir. 1994); see alsoBalfour Beatty Constr. Inc., 986 F. Supp. at 85. After a declaration of default, the surety owes an immediate duty to the obligee. Id. Accordingly, as discussed supra, action by a bond holder which deprives a surety of its ability to protect itself pursuant to performance options granted under a performance bond constitutes evidence of a material breach, which renders the bond null and void. St. Paul Fire Marine Ins. Co. v. City ofGreen River, 93 F. Supp. 2d 1170, 1178 (D.Wyo. 2000) (citingL A Contracting Co., 17 F.3d at 111; Balfour BeattyConstr. Inc., 986 F. Supp. at 86; Ins. Co. v. MetropolitanDade County, 705 So.2d 33, 34-35 (Fla. Dist. Ct. App. 1997);Dragon Const., Inc. v. Parkway Bank Trust,678 N.E.2d 55, 58 (Ill. App. Id. 1997)). For instance, inBalfour, the bond holder failed to notify the surety of the default, allowed the principal to complete the work in an untimely manner, and then sought recovery from the surety. Balfour BeattyConstr. Inc., 986 F. Supp. at 85-86. The Balfour Court held that because the bond holder's actions denied the surety of an opportunity to exercise any of the remedial options granted under the performance bond, the bond holder could not recover under that bond. Id. at 86. Similarly in the instant matter, Western was effectively denied any recourse under the Performance Bond when Cardi failed to adhere to the mandates of §§ 3, 4, 5, and 6 of the Performance Bond.
 CONCLUSION
For the foregoing reasons, the Court denies Cardi's motion for reconsideration.
Prevailing counsel may present an order consistent herewith which shall be settled after due notice to counsel of record.