DECISION
Before the Court for decision are Super. R. Civ. P. Rule 56 cross-motions for summary judgment brought by Defendant and Third-Party Plaintiff Cardi Corporation (Cardi) and Third-Party Defendant Western Surety Company (Western). Cardi has filed a Third-Party Complaint against Western for all sums, if any, due to Cardi from its subcontractor Raito, Inc. (Raito). Western, the surety for Raito, has moved for summary judgment, arguing that Western should be discharged from any liability under the parties' Performance Bond because *Page 2 
Cardi failed to comply with its express conditions precedent. Cardi's cross motion for summary judgment challenges the existence of such conditions precedent.
 I Facts Travel
On or about August 1, 2003, Cardi, as general contractor, entered into a contract (the Contract) with the State of Rhode Island, acting through the Rhode Island Department of Transportation for the construction of a new arch-span bridge over the Providence River on Interstate I-95 (the Project). Cardi, in connection with the Project, entered into a subcontract (the Subcontract) with Raito to install a series of concrete foundation shafts for the new bridge. (Pl. Ex. A.) With regard to the Subcontract, Raito, as principal, and Western as surety executed Payment Bond No. 929298884 (Payment Bond)[1] and Performance Bond No. 929298884 (Performance Bond). (Pl. Ex. B.)
Cardi alleges that during the course of the work, Raito failed to perform the work in a timely and acceptable manner which resulted in delays to the Project and costs and damages to Cardi. Despite the alleged delays, Cardi never gave notice that it was considering declaring a default or attempted to arrange a conference with Western and Raito, but rather "back-charged" any delay costs against amounts which would have been due to Raito for its work under the Subcontract. Raito then filed the instant action to recover monies allegedly due from Cardi in connection with work performed as a subcontractor on the Project. Cardi counterclaimed against Raito to recover damages caused by Raito's alleged failure to timely and effectively perform such work. Additionally, both Raito and Cardi have brought actions against each other's sureties. Here, Western, Raito's surety, requests summary judgment on the basis of Cardi's *Page 3 
failure to issue a notice of default and to terminate Raito's Subcontract, which it alleges are preconditions to liability, at some specified time prior to filing the instant action against Western.
 II Standard of Review
Summary judgment is proper when, after reviewing the admissible evidence in the light most favorable to the non-moving party, "no genuine issue of material fact is evident from the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, and the motion justice finds that the moving party is entitled to prevail as a matter of law."Smiler v. Napolitano, 911 A.2d 1035, 1038 (R.I. 2006) (quoting Rule 56(c)). When considering a motion for summary judgment, "the court may not pass on the weight or credibility of the evidence but must consider the affidavits and other pleadings in a light most favorable to the party opposing the motion." Lennon v.MacGregor, 423 A.2d 820, 822 (R.I. 1980). During a summary judgment proceeding, "the justice's only function is to determine whether there are any issues involving material facts."Id. (quoting Steinberg v. State, 427 A.2d 338, 340 (R.I. 1981)). "Therefore, summary judgment should enter `against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case * * *.'" Lavoie v.North East Knitting, Inc., 918 A.2d 225, 228 (R.I. 2007) (quotingCelotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (construing the substantially similar federal rule)).
 III Discussion
This action centers on whether the Performance Bond, a standard American Institute of Architects A312 Performance Bond, [2]
required Cardi to issue a notice of default and to terminate Raito's Subcontract before commencing an action against Western. Western argues that notice *Page 4 
of a default and termination are conditions precedent under the Performance Bond which should have been satisfied prior to commencing this action against Western. Cardi argues that the Performance Bond, which by reference incorporates the Subcontract, does not create conditions precedent requiring notice of default and termination prior to filing an action against the surety. Additionally, Cardi contends that even if the Performance Bond does contain such preconditions, Cardi satisfied them with its 2009 termination of the Subcontract.[3]
Under Rhode Island law, a performance bond must be strictly construed and the nature and extent of a surety's liability is governed by the express terms of the bond. Marshall Contractors,Inc. v. Peerless Ins. Co., 827 F.Supp. 91, 94 (D.R.I. 1993) (citing Narragansett Pier R.R. v. Palmer, 70 R.I. 298, 302,38 A.2d 761, 763 (1944)). However, in the instant matter, since the Subcontract is incorporated by reference into the Performance Bond, they should be construed together. See Stanley-Bostitch,Inc. v. Regenerative Environmental Equipment Co., Inc.,786 A.2d 1063, 1065 (R.I. 2001). When reviewing a contract, terms that are clear and unambiguous must be applied as written A.F.Lusi Construction, Inc. v. Peerless Insurance Co., 847 A.2d 254,258 (R.I. 2004) (citing W.P. Associates v. Forcier, Inc.,637 A.2d 353, 356 (R.I. 1994)). In determining whether an agreement is clear and unambiguous, the document must be viewed in its entirety and its language be given its plain, ordinary and usual meaning. Antone v. Vickers, 610 A.2d 120, 123 (R.I. 1992). Applying this standard, an agreement is ambiguous only when it is reasonably and clearly susceptible to more than one interpretation.W.P. Associates, 637 A.2d at 356 (citing Gustafson v. MaxFish Plumbing Heating Co., 622 A.2d 450, 452 (R.I. 1993);Nelson v. Ptaszek, 505 A.2d 1141, 1143 (R.I. 1986). A court should favor interpretations *Page 5 
which give meaning and effect to every part of the contract and reject those which reduce words to mere surplusage.Systematized of New England, Inc. v. SCM, Inc., 732 F.2d 1030,1034 (1st Cir. 1984).
The particular language of the Performance Bond states that if Cardi is not in default,
 "the Surety's obligation under this Bond shall arise after
 3.1 The Owner [Cardi] has notified the Contractor [Raito] and the Surety [Western] at its address described in paragraph 10 below that the Owner is considering declaring a Contractor Default and has requested and attempted to arrange a conference with the Contractor and the Surety to be held not later than 15 days after receipt of such notice to discuss methods of performing the Construction Contract, but such an agreement shall not waive the Owner's right, if any, subsequently to declare a Contractor Default, and
 3.2 The Owner has declared a Contractor Default and formally terminated the Contractor's right to complete the contract. Such Contractor Default shall not be declared earlier than twenty days after the Contractor and the Surety have received notice as describe in paragraph 3.1, and
 3.3 The Owner has agreed to pay the Balance of the Contract Price to the Surety in accordance with the terms of the Construction Contract or to a contractor selected to perform the Construction Contract in accordance with the terms of the contract with the Owner."
The Bond further states that once Cardi "has satisfied the conditions of Paragraph 3" Western has the obligation to take one of the actions described in Paragraph 4, which pertain to the Surety's rights to perform and complete the Construction Contract. (Pl. Ex. B ¶ 4.) Article IX(a) of the Subcontract states that "[i]f Subcontractor, in the opinion of Contractor, refuses or fails to prosecute the work, . . . with such diligence as will insure it's completion within the time specified . . . Contractor may, by written notice to Subcontractor, terminate his right to proceed with the work . . ." (Pl. Ex. A Art. IX(a).) However, Article IX(b) of the Subcontract expressly *Page 6 
provides that if Cardi "does not terminate the right of the Subcontractor [Raito] to proceed, as provided in paragraph (a) . . . Subcontractor shall continue the work in which event he and his sureties shall be liable to the Contractor . . . for any actual damages suffered . . ." (Pl. Ex. A Art. IX(b).)
Given the lack of Rhode Island case law directly on point, Cardi cites to a case from the United States District Court for the Southern District of New York which held that the language of Paragraph 3 in a A312 Performance Bond does not constitute a condition precedent to a surety's liability for indemnification for delay claims under Paragraph 6. Int'l Fidelity Ins. Co. v. Countyof Rockland, 98 F.Supp.2d 400, 435 (S.D.N.Y. 2000). However, the plain language of Paragraph 6 provides that the surety's responsibilities arise after the owner has terminated the contractor's right to complete the construction contract. (Pl. Ex. B ¶ 6.) Additionally, under Paragraph 6, a surety is only responsible for "[a]dditional legal, design professional and delay costs resulting from the Contractor's Default, and
resulting from the actions or failure to act of the Surety under Section 4." (Pl. Ex. B ¶ 6.2) Furthermore, subsequent to the decision in Int'l Fidelity, the Second Circuit expressly held that Paragraph 3 contains a number of conditions precedent which need to be satisfied before a surety's obligations under the bond can arise. U.S. Fidelity and Guar. Co. v. Braspetro OilServs., 369 F.3d 34, 51 (1st Cir. 2004). Moreover, other courts have consistently found that the language in Paragraph 3, "the Surety's obligation under this Bond shall arise after . . .," creates conditions precedent. See Walter ConcreteConstr. Corp. v. Lederle Laboratories, 788 N.E.2d 603, 605 (N.Y. 2003) (finding that "[h]ad the parties to the contract desired notice of default as a precursor to liability under the bond, they could have elected to issue the more specific AIA-312, which by its terms requires predefault notification to be given to the contractor and surety by the owner"); see also EnterpriseCapital, Inc. v. San-Gra *Page 7 Corp., 284 F.Supp.2d 166, 180 FN 21 (D.Mass. 2003);120 Greenwich Development Associates, LLC v. Reliance,2004 WL 1277998, *12 (S.D.N.Y. 2004); Bank of Brewton, Inc. v. Int'lFidelity Ins. Co., 827 So.2d 747, 753 (Ala. 2002). Therefore, the Court concludes that the language of Paragraph 3 in an unmodified AIA Performance Bond does create preconditions for a surety's obligations under such Bond.
However, here the Court is confronted with a modified AIA Performance Bond since the Performance Bond at issue incorporates the Subcontract which has language pertaining to termination. Cardi points to the language in Article IX(b) to support its contention that regardless of its decision not to issue a default and terminate Raito, Western is liable for any damages resulting from Raito's failure to timely and properly perform. Conversely, Western argues that Cardi's approach ignores the plain language of the Performance Bond and would render it meaningless by depriving a surety of any ability to mitigate its liability.
The Court's review of the parties' entire agreement reveals that its terms are clear and unambiguous and therefore must be applied as written. The Performance Bond expressly states that Western's obligations under the Performance Bond "shall arise after" Cardi satisfies the conditions of Paragraph 3. (Pl. Ex. B ¶ 3.) Paragraph 3 requires the Owner, or in this instance Cardi, to notify both the Subcontractor and the Surety that it is considering declaring a default and to request and attempt to have a conference with both parties to discuss methods of performance under the Subcontract. If after such actions performance is still unacceptable, the Owner may declare a default and formally terminate the Subcontractor. Additionally, provisions of the Subcontract also speak to termination and under Article IX(a), if the Subcontractor is refusing or failing to diligently perform its work, the Owner, after providing notice and an opportunity to cure, may terminate the Subcontractor. Further, under IX(b) if the Owner decides *Page 8 
not to terminate as provided in paragraph (a) the Subcontractor must continue the work and he and his sureties will be liable for any resulting damages.
The language of IX does not conflict with or negate Cardi's obligations under Paragraph 3. If Cardi decided to terminate Raito as provided in Article IX(a), it would have had to follow the conditions outlined in Paragraph 3 in order for Western to be liable. Further, although IX(b) provides that Western will be liable even if Cardi does not terminate Raito as provided in IX(a), action under Paragraph 3 is still applicable. The first action required under Paragraph 3.1, before the declaration of a default or termination, is for Cardi to notify both Raito and Western that Cardi is considering declaring a default, hold a conference with both parties, and allow Raito a reasonable opportunity to cure its deficiencies. In the same vein, under IX(a), termination is only proper after notification of the deficiencies and an opportunity to cure. Moreover, a default under Paragraph 12.3 means the failure of a contractor to perform or comply, which has neither been "remedied nor waived." (Pl. Ex. B ¶ 12.3; emphasis added) The combination of all such provisions indicates that there is a period, before Cardi decides whether or not to terminate, during which time if Cardi is dissatisfied with Raito's performance, it should give Raito the opportunity to improve and properly comply with the terms of the Subcontract.
It is the Court's opinion that during this time period Cardi isconsidering declaring a default and terminating Raito. The term "consider" — which in this context means "[t]o think carefully about" — "suggests objective reflections and reasoning." TheAmerican Heritage Dictionary of the English Language 392 (4th ed. 2000); see also State ex rel.Porter v. Dist. Court of First Judicial Dist. Et al.,124 Mont. 249, 266, 220 P.2d 1035, 1044 (Mont. 1950) (citingPeople v. TruSport Pub. Co., 160 Misc. 628, 636,291 N.Y.S. 449, 457 (1936) (finding that "[t]o consider a proposition of any kind means to think about it, to reflect upon or ponder it"). Cardi *Page 9 
had the option to terminate Raito under IX(a) and take over construction or not to terminate under IX(b) and "backcharge" Raito for its alleged continued deficiencies. Even though Cardi ultimately decided not to terminate Raito, it did not excuse Cardi from complying with Paragraph 3.1 and notifying Western that it deemed Raito to be untimely and improperly performing and allowing Western an opportunity to mitigate its damages. Therefore, Cardi did not comply with a condition precedent when it failed to notify Western and hold a conference in accordance with Paragraph 3.1.
Lending further support to this interpretation is that courts have consistently held that a bond holder's action that deprives a surety of its ability to protect itself pursuant to performance options granted under a performance bond constitutes a material breach, which renders the bond null and void. St. PaulFire Marine Ins. Co. v. City of Green River, 93 F.Supp.2d 1170,1178 (D.Wyo. 2000) (citing L A Contracting Co. v. SouthernConcrete Servs., 17 F.3d 106, 111 (5th Cir. 1994);Balfour Beatty Constr. Inc. v. Colonial Ornamental Iron Works,Inc., 986 F.Supp. 82, 86 (D.Conn. 1997); Ins. Co. v.Metropolitan Dade County, 705 So.2d 33, 34-35 (Fla.Dist.Ct.App. 1997); Dragon Const., Inc. v. Parkway Bank Trust,678 N.E.2d 55, 58 (Ill.App. 1d. 1997)). For instance, inBalfour the performance bond provided that when the bond holder declared a principal default, the surety could remedy the default, or, after reasonable notice to the surety, the bond holder could arrange for remedy at the surety's expense. Balfour BeattyConstr., Inc., 986 F.Supp. at 84. Similar to the instant action, the bond holder in Balfour failed to notify the surety of the default, allowed the principal to complete the work in an untimely manner, and then sought recovery from the surety. Id.
at 85-86. The Court held that because the bond holder's actions denied the surety of an opportunity to exercise any of the remedial options granted under the performance bond, the bond holder could not recover under *Page 10 
the performance bond. Id. at 86. Because Western was similarly prejudiced by a lack of notice and an inability to limit its liability under the Performance Bond, the Court grants summary judgment to Western, which is discharged from any liability under the Performance Bond.
 VI Conclusion
After due consideration of the arguments advanced by counsel at oral argument and in their memoranda, the Court finds that the language in Paragraph 3.1 of the Performance Bond created a condition precedent, obligating Cardi to notify Raito and Western that Raito's performance was unsatisfactory and Cardi was considering declaring a default and terminating the Subcontract. Therefore, this Court grants Western's motion for summary judgment and discharges Western from liability under the Performance Bond.
Prevailing counsel may present an order consistent herewith which shall be settled after due notice to counsel of record.
[1] Pursuant to an Order of the Court, Western's summary judgment motion does not extend to matters relating to the Payment Bond.
[2] The A312™-1984 Performance Bond is a commonly used form bond issued by the American Institute of Architects that details a surety's liability if a contractor fails to perform under a construction contract.
[3] On August 13, 2009, more than two years after Raito commenced the instant action against Cardi, Cardi demanded that Raito make payment to Cardi in the amounts due, gave notice of a pending default and termination of Raito, and requested a meeting with Raito and Western. A "notice" that was given well after completion of the Project and after the filing of Western's present summary judgment motion will not be considered when determining the satisfaction of any conditions precedent in the Performance Bond.